141 T.C. No. 3

UNITED STATES TAX COURT

JAMES R. DIXON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

SHARON C. DIXON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 9962-05L, 9965-05L.        Filed September 3, 2013.


        Ps were criminally prosecuted for failure to file individual
income tax returns for 1992-95.  At the time, Ps were owners,
officers, and employees of Tryco Corp., which failed to file
employment tax returns and corporate income tax returns during this
period.  As part of a plea agreement with the Department of Justice,
Ps agreed that their wrongdoing had inflicted a "tax loss" on the IRS
of $61,021 and acknowledged that they could be required to make
restitution of this amount.  On advice of their attorney they
transferred funds to Tryco with instructions that Tryco remit the funds
to the IRS.  In December 1999 Tryco remitted $61,021 to the IRS
with a cover letter from Ps' attorney designating the payment as
"payment of [Form] 941 taxes of the corporation" that was "to be
applied to the withheld income taxes" of Ps for specified calendar
quarters of 1992-95.  In early 2000 Ps' accountants determined that
Ps actually owed $30,202 more in individual income tax for 1992-95

than Tryco had remitted to the IRS in December 1999. Accordingly, Ps transferred additional funds to Tryco, and in June 2000 Tryco remitted to the IRS an additional check for $30,202. The cover letter from Ps' attorney stated that the payment was "submitted as a pre-assessment designated payment of [Form] 941 taxes of the corporation" which "represents the withheld income taxes of * * * [Ps]" for the fourth quarter of 1995. Ps argued for a downward adjustment to their sentence and for a probated sentence on the ground that they had remitted taxes to the IRS in excess of the "tax loss" determined in the plea agreements. They were sentenced to probation and a small fine.

Subsequently, R filed a notice of intent to levy on Ps' assets in satisfaction of their assertedly unpaid 1992-95 income tax liabilities. Ps were granted a collection due process (CDP) hearing in which they challenged the levy on the ground that Tryco's 1999-2000 remittances had discharged their 1992-95 income tax liabilities in full. The Appeals officer upheld the levy, concluding that Tryco's 1999-2000 payments "were not withheld at the source and * * * cannot be designated to the withholding of a specific employee." Ps timely petitioned under I.R.C. sec. 6330(d)(1) for review of this determination.

1. Held: Ps are not entitled to a credit under I.R.C. sec. 31(a) for the $91,223 Tryco remitted to the IRS in 1999-2000 because funds in that amount were not "actually * * * withheld at the source" by Tryco from Ps' wages during 1992-95. See sec. 1.31-1(a), Income Tax Regs.

2. Held, further, this Court has subject matter jurisdiction to determine whether R was obligated to honor Tryco's designation of its 1999-2000 delinquent employment tax payments toward Ps' income tax liabilities for 1992-95.

3. Held, further, there is no need to decide the applicable standard of review in these CDP appeals because, under Ps' alternative argument, R's proposed collection action would be

impermissible either under an abuse of discretion standard or under a de novo standard.

4. Held, further, R was required to honor Tryco's designation of its 1999-2000 delinquent employment tax payments towards Ps' income tax liabilities for 1992-95. Because those payments discharged Ps' 1992-95 income tax liabilities in full, R's proposal to levy on their assets to collect this tax a second time was an abuse of discretion.

Juan F. Vasquez, Jr., and Renesha N. Fountain, for petitioners.

W. Lance Stodghill and Derek B. Matta, for respondent.

LAUBER, Judge:  This is a collection due process (CDP) appeal pursuant to section 6330(d)(1).[1]  Petitioners challenge a decision by the Internal Revenue Service (IRS or respondent) to levy on their assets for the purpose of collecting their individual income tax liabilities for 1992-95.  Petitioners were owners, officers, and employees of Tryco Corp. (Tryco).  They challenge the proposed levy on the ground that these liabilities were fully discharged by payments that Tryco made to the IRS in 1999 and 2000.

---

[1]Statutory references are to the Internal Revenue Code (Code) in effect at the relevant times.  Dollar amounts are rounded to the nearest dollar.

These cases were tried before Judge Holmes in November 2006, and the facts are detailed in a separate Memorandum Opinion by Judge Holmes, Dixon v. Commissioner, T.C. Memo. 2013-207, filed concurrently with this Opinion. During 1999 and 2000 Tryco remitted to the IRS payments aggregating $602,119 with respect to petitioners' 1992-95 income tax liabilities.[2]  Basing his findings in part on credibility determinations, Judge Holmes concludes that payments totaling $510,896 that Tryco remitted in December 1999 represent tax actually withheld at the source within the meaning of sections 3402 and 3403.  He accordingly holds that petitioners are entitled to a credit under section 31 for these payments.  Dixon v. Commissioner, at *17.  In this Opinion, we address the consequences for petitioners of the $91,223 balance of Tryco's payments.

FINDINGS OF FACT

Some facts have been stipulated, and the stipulation of facts and its accompanying exhibits are incorporated by this reference.  On December 22, 1999, Tryco submitted 32 separate checks to the IRS, in the aggregate amount of $571,917, with respect to petitioners' income tax liabilities for 1992 through 1995.

---

[2]In referring to petitioners' "income tax liabilities," we generally mean their income tax liabilities for 1992-95 exclusive of any interest, additions to tax, and penalties.  We address applicable interest and penalties infra pp. 36-37 of this Opinion.

These checks represented delinquent payments of employment tax for petitioners James Dixon and Sharon Dixon, respectively, for the 16 calendar quarters in those four tax years. Petitioners provided Tryco with the funds to make these payments by executing a mortgage on their home and contributing the mortgage proceeds to Tryco.

Each check Tryco issued was accompanied by a substantially identical cover letter signed by petitioners' attorney, informing the IRS that the check represented "payment of [Form] 941 taxes of the corporation," for a specified calendar quarter in a specified amount, "to be applied to the withheld income taxes of employee Sharon Dixon" or "to the withheld income taxes of employee James R. Dixon," as the case may be. The "memo" line on each check was inscribed "Designated Payment of 941 Taxes * * * for Sharon Dixon" or "Designated Payment of 941 Taxes * * * for James R. Dixon" for the relevant calendar quarter.

Judge Holmes concludes that $510,896 of the total amount Tryco remitted in December 1999 represents tax that Tryco actually withheld at the source from petitioners' wages during 1992-95. The balance of the December 1999 remittance, or $61,021, represented the "tax loss" that petitioners and the Department of Justice agreed that the Federal Government had suffered as a result of petitioners'

tax crimes.[3] Of this "tax loss," $30,799 was allocable to Sharon Dixon and $30,222 was allocable to James Dixon. In their plea agreements, executed February 7, 2000, petitioners acknowledged that they "may be required to make full restitution for the losses sustained by the Internal Revenue Service as a result of the offenses of conviction." See generally U.S. Sentencing Guidelines Manual sec. 5E1.1 (2012) (discussing restitution); John A. Townsend, et al., Tax Crimes 305-306 (2008). Under the plea agreements the magnitude of the "tax loss" would be taken into account for sentencing purposes.

In early 2000 petitioners' accountants determined that petitioners actually owed $30,202 more in individual income tax for 1992-95 than Tryco had remitted to the IRS in December 1999. Accordingly, petitioners contributed additional funds to Tryco and, on June 1, 2000, Tryco remitted to the IRS an additional check for $30,202. The cover letter accompanying this check, signed by petitioners' attorney, informed the IRS that the payment was "submitted as a pre-assessment designated payment of [Form] 941 taxes of the corporation [Tryco] for calendar

---

[3]Under the Federal Sentencing Guidelines, the "tax loss" suffered by the Government determines the "offense level," which in turn affects the sentence received by the defendant--the higher the offense level, the longer the possible prison term. See generally John A. Townsend, et al., Tax Crimes 321-322 (2008). A "tax loss" between $30,000 and $79,999 equates to an "offense level" of 14 as compared with a maximum offense level of 36 for a "tax loss" exceeding $400 million. See U.S. Sentencing Guidelines Manual sec. 2T4.1 (2012) (Tax Table).

quarter 9504, and which represents the withheld income taxes of employee James R. Dixon and employee Sharon Dixon."

Before sentencing, petitioners argued for a downward departure from the Federal Sentencing Guidelines and for a probated sentence on the ground that they had remitted taxes to the IRS substantially in excess of the "tax loss" determined in their plea agreements. On June 9, 2000, each petitioner was sentenced by the U.S. District Court for the Southern District of Texas to four years' probation and a relatively small fine.

The IRS accepted all of Tryco's payments. According to IRS transcripts of petitioners' accounts, the IRS initially credited these payments to petitioners' 1992-95 income tax liabilities, as designated by Tryco. If credited to petitioners' account, these payments would have fully discharged their 1992-95 income tax liabilities (excluding any applicable interest and penalties). Subsequently, the IRS reversed itself and chose to disregard Tryco's designation. Instead, the IRS applied the payments to Tryco's general unpaid employment tax liabilities, which then exceeded $23 million.

Respondent ultimately issued petitioners a notice of intent to levy on their assets in satisfaction of their assertedly unpaid 1992-95 income tax liabilities. Petitioners requested and were granted a CDP hearing under section 6330(a).

After several exchanges, the Appeals officer upheld the levy, concluding that Tryco's 1999 and 2000 payments "were not withheld at the source and * * * cannot be designated to the withholding of a specific employee." Petitioners timely petitioned this Court under section 6330(d)(1) for review of the Appeals officer's determination. They resided in Texas when they filed the petition.

OPINION

Petitioners advance two distinct arguments in support of their position. First, they contend that they are entitled to a withholding credit under section 31, not only for the $510,896 that Judge Holmes finds Tryco to have actually withheld at the source, but also for the balance of the funds, totaling $91,223, that Tryco remitted to the IRS in December 1999 and June 2000. Second, in the event we determine that no credit is available under section 31, petitioners contend that the IRS was obligated to honor Tryco's designation of this $91,223 toward payment of petitioners' 1992-95 income tax liabilities and that the IRS is therefore precluded from levying on their assets to collect this tax a second time. We discuss these arguments in turn.

I. Credit Under Section 31

Section 3402, captioned "Income Tax Collected at Source," requires that an employer withhold from its employees' wages, and remit directly to the IRS, the

income tax that employees are expected to owe for that year, on the basis of exemptions the employees claim on their Forms W-4, Employee's Withholding Allowance Certificate. The employer periodically remits and reports to the IRS on Forms 941 the aggregate funds withheld from its employees. At the end of the year, the employer determines the amounts withheld for employees individually. These amounts are reported to the IRS and employees on separate Forms W-2, Wage and Tax Statement, and the combined information is reported to the IRS on Form W-3, Transmittal of Wage and Tax Statements.

The employer is "required to collect the tax by deducting and withholding the amount thereof from the employee's wages as and when paid, either actually or constructively." Sec. 31.3402(a)-1(b), Employment Tax Regs. The adverb "constructively" refers, not to constructive withholding of the tax at the source, but to constructive payment of wages. The regulations explain that "[w]ages are constructively paid when they are credited to the account of or set apart for an employee so that they may be drawn upon by him at any time." Ibid.

If an employer actually withholds tax from an employee's wages, but withholds less than the correct amount of tax, section 6205(a)(1) provides that "proper adjustments, with respect to both the tax and the amount to be deducted, shall be made, without interest, in such manner and at such times as the Secretary

may by regulations prescribe." The regulations allow an employer to correct an underwithholding on a supplemental return filed as late as "the last day on which the return is required to be filed for the return period in which the error was ascertained." Sec. 31.6205-1(c)(2)(i), Employment Tax Regs.[4] The employer must concurrently notify the employee by furnishing a corrected Form W-2, styled "Form W-2c." When an employer timely corrects an underwithholding in this manner, it is instructed to collect the underwithheld income tax from the employee "on or before the last day of such year by deducting such amount from remuneration of the employee." Sec. 31.6205-1(c)(4), Employment Tax Regs.

The "proper adjustment" procedure outlined in section 6205 is beneficial to employers because it enables them to correct an underwithholding of tax without paying interest or penalties to the IRS. The regulations emphasize, however, that there is a limited time during which an employer may avail itself of this benefit. A subsequent reporting "constitutes an adjustment within the meaning of this section only if the return or supplemental return on which the underpayment is reported" is filed within the prescribed time period. Sec. 31.6205-1(c)(2)(i), Employment

---

[4]Except as otherwise noted, the section 6205 regulations cited in this Opinion were those in effect during the tax years at issue. Those regulations were superseded by regulations finalized on July 2, 2008, T.D. 9405, 2008-32 I.R.B. 293, which apply to any error ascertained after January 1, 2009. The 2008 regulations do not differ substantially from the prior regulations.

Tax Regs.; see sec. 31.6205-1(c)(3)(ii), Employment Tax Regs. (amounts payable under "proper adjustment" procedure "shall be paid to the district director, without interest, at the time fixed for reporting the adjustment").

Section 3403 provides that "[t]he employer shall be liable for the payment of the tax required to be deducted and withheld under this chapter." The regulations confirm that an employer who is required to deduct and withhold income tax under section 3402 "is liable for the payment of such tax whether or not it is collected from the employee by the employer." Sec. 31.3403-1, Employment Tax Regs. If an employer fails to withhold and the tax in question is subsequently paid by the employee, section 3402(d) ensures against double collection by relieving the employer of liability for that same tax. But it makes clear that the employer is not thereby relieved "from liability for any penalties or additions to the tax otherwise applicable in respect of such failure to deduct and withhold." Sec. 3402(d).

Section 31(a)(1) sets forth the consequences for the employee of the employer's withholding at the source. It provides that the amount withheld by the employer as tax from an employee's wages "shall be allowed to the recipient of the income as a credit" against his or her income tax liability for that year. This

credit is available only "[i]f the tax has actually been withheld at the source."  Sec. 1.31-1(a), Income Tax Regs.

The requirement of "actual withholding" at the source is confirmed by section 3402(a)(1), which provides that an employer making payment of wages shall deduct and withhold tax "upon such wages."  If an employer remits funds to the IRS years after the wages were paid and the section 6205 window for making "proper adjustment" has closed, that payment cannot represent a withholding of tax "upon such wages."  See sec. 6513(b)(1) (employee deemed to have paid tax on April 15th following close of the tax year only when tax has been "actually deducted and withheld at the source"); see also Begier v. IRS, 496 U.S. 53, 60-61 (1990) ("Withholding thus occurs at the time of payment to the employee of his net wages."); Edward v. Commissioner, 323 F.2d 751, 752 (9th Cir. 1963) (section 31 affords the taxpayer a credit "for tax actually withheld from his wages by his employer"), aff'g in part, rev'g in part 39 T.C. 78 (1962).  If the tax is actually deducted and withheld at the source, "credit or refund shall be made to the recipient of the income even though such tax has not been paid over to the Government by the employer."  Sec. 1.31-1(a), Income Tax Regs.

This statutory scheme sets forth clearly the conditions under which a taxpayer is entitled to a section 31 withholding credit.  An employee's entitlement

to this credit depends on whether the income tax in question "has actually been withheld at the source" by the employer. Sec. 1.31-1(a), Income Tax Regs. Tax is deemed to have been actually withheld at the source only if the employer (a) contemporaneously withholds tax in the correct amount, or (b) corrects an underwithholding of the tax by making a "proper adjustment" within the period prescribed by section 6205(a)(1).

Neither of these conditions was satisfied with respect to the $91,223 of aggregate payments in issue here. Neither the $61,021 attributable to the "tax loss" occasioned by petitioners' offenses nor the $30,202 attributable to errors discovered by petitioners' accountants in early 2000 represents funds contemporaneously "withheld at the source" by Tryco from petitioners' wages. And these payments, submitted in December 1999 and June 2000, respectively, were made well outside the time period prescribed by section 6205(a)(1) for making "proper adjustments" to an underwithholding for the fourth quarter of 1995. Petitioners are accordingly foreclosed from claiming a withholding credit under section 31 for these sums.

In holding that a section 31 credit is unavailable in these circumstances, we answer the question that we left open in McLaine v. Commissioner, 138 T.C. 228 (2012). There, the taxpayer advanced a "constructive withholding" theory in

support of his contention that he was entitled to a section 31 credit, against his individual income tax liability for 1999, for a payment that his corporation allegedly made to the IRS in 2004 or 2005. See id. at 238-239. We found no need to decide this question in McLaine, finding as a fact that no payment had been made by the corporation in the later years. See id. at 239, 242. Judge Halpern in his concurring opinion did reach this question, concluding that, when an employer pays in a later year the nonwithheld income tax of an employee for an earlier year, the employee as a matter of law is not entitled to a credit under section 31. See id. at 252-258 (Halpern, J., concurring). We express now our agreement with Judge Halpern's conclusion.[5]

In finding it unnecessary to decide the section 31 issue in McLaine, we noted that "[w]e may one day be presented with a case in which the IRS proposes to collect a party's liability that has been paid by another person." 138 T.C. at 242. That day has arrived. Petitioners distinctly advance an alternative argument, premised on Tryco's specific designation of its December 1999 and June 2000

---

[5]In Whalen v. Commissioner, T.C. Memo. 2009-37, 97 T.C.M. (CCH) 1147, 1149, we suggested in dictum that a tax payment by an employer in 2004 with respect to an employee's tax liability for 2001 "could plausibly be characterized as withholding tax under chapter 24 with a corresponding section 31 credit being allowed to a proper recipient." This Opinion clarifies the Court's position and concludes that a section 31 withholding credit would not be allowable to the taxpayer in such circumstances.

payments, for a credit of $91,223 against their 1992-95 income tax liabilities.  We turn now to this alternative argument.

## II.      Credit Through Specific Designation of Tax Payment

### A.      Jurisdiction

At the outset, the IRS argues that we lack subject matter jurisdiction to decide whether it was obligated to honor Tryco's specific designation of the delinquent 1999-2000 employment tax payments.  Respondent notes correctly that this Court, for the tax years at issue, generally lacked jurisdiction concerning employment tax liabilities.  From that premise, respondent concludes that we have no jurisdiction to decide whether an employer's designated payments of delinquent employment taxes should properly be credited to the income tax liabilities of the named employees.  We reject this argument because respondent's conclusion does not follow from his premise.

Section 6330(d)(1) governs judicial review of CDP determinations by the IRS.  The statute in its current form states that the taxpayer may appeal a CDP determination to the Tax Court "and the Tax Court shall have jurisdiction with respect to such matter."  Before 2006, however, the statute provided two different avenues of appeal:  to the Tax Court or, "if the Tax Court does not have jurisdiction of the underlying tax liability, to a district court of the United States."

Sec. 6330(d)(1)(B) (2006) (before amendment by the Pension Protection Act of 2006, Pub. L. No. 109-280, sec. 855(a), 120 Stat. at 1019).  The "underlying tax liabilit[ies]" over which this Court has jurisdiction consist of income tax imposed by subtitle A, estate and gift taxes imposed by subtitle B, and certain excise taxes imposed by chapters 42 through 45.  See sec. 6213(a).  This Court generally lacks jurisdiction over employment taxes, except to determine, under section 7436(a), "the proper amount of employment tax" consequent upon a determination that a person should be classified as an "employee" as opposed to an "independent contractor."

The "underlying tax liabilit[ies]" that were the subject of petitioners' CDP hearing were their income tax liabilities for 1992-95.  During the hearing petitioners contended that respondent should not levy to collect this tax because the tax, by virtue of Tryco's designated payments, had already been paid.  Section 6330(c)(2)(A) provides that a taxpayer may raise at a CDP hearing "any relevant issue relating to the unpaid tax or the proposed levy."  Petitioners' contention that the allegedly unpaid tax for 1992-95 had already been paid was surely "relevant" to respondent's proposal to levy on their assets to collect this same tax.

The Appeals officer considered and rejected petitioners' designation argument, concluding that Tryco's 1999-2000 payments "cannot be designated to

the withholding of a specific employee." We have jurisdiction to review that conclusion because it determines whether petitioners have unpaid income tax liabilities that are a proper subject of IRS collection action. In determining whether the IRS may properly take collection action, our jurisdiction "extends to facts and issues in nondetermination years where they are relevant to computing the unpaid tax." Freije v. Commissioner, 125 T.C. 14, 26-27 & n.14 (2005). As we concluded in Freije, an issue relevant to computing the unpaid tax "surely includes a claim * * * that the 'unpaid tax' has in fact been satisfied by a remittance that the Commissioner improperly applied elsewhere." Id. at 26.

In sum, because the question whether Tryco's designated payments should have been credited toward petitioners' 1992-95 income tax liabilities is relevant to computing the unpaid tax, we have jurisdiction to decide this question. The extent of our jurisdiction over employment tax liabilities is immaterial because the underlying tax liabilities at issue on this appeal are petitioners' income tax liabilities for 1992-95.

B.    Standard of Review

Section 6330(d)(1) does not prescribe the standard of review that this Court shall apply in reviewing an IRS administrative determination in a CDP case. The general parameters for such review are marked out by our precedents. We

generally review the Appeals officer's determination as to the propriety of particular collection action for abuse of discretion. <u>Wadleigh v. Commissioner</u>, 134 T.C. 280, 288 (2010); <u>Sego v. Commissioner</u>, 114 T.C. 604, 610 (2000). In some situations, the taxpayer may not have received a notice of deficiency or may not otherwise have had an opportunity to challenge the tax assessed against him. Where the validity of the underlying tax liability is properly at issue, the Court will review the matter de novo. <u>See</u> <u>Wadleigh</u>, 134 T.C. at 288; <u>Sego</u>, 114 T.C. at 610; <u>Goza v. Commissioner</u>, 114 T.C. 176, 181-182 (2000).

The IRS did not send petitioners a notice of deficiency for the tax years at issue. In their posttrial brief, petitioners accordingly urged a de novo standard of review. In its posttrial brief, the IRS agreed that, "[s]ince the validity of the underlying tax liability is at issue, the Court will determine the underlying tax liability de novo."

There is some uncertainty in our precedents as to whether a de novo standard of review applies where (as here) the controversy concerns the proper application, to the tax liability at issue in the CDP hearing, of a credit, overpayment, or remittance.[6] Petitioners contend that respondent's refusal to

---

[6]<u>Compare</u> <u>Landry v. Commissioner</u>, 116 T.C. 60, 62 (2001) (applying de novo standard where taxpayer challenged application of overpayment credits,

(continued...)

honor Tryco's designation of the December 1999 and June 2000 payments was inconsistent with judicial precedent and with the published IRS administrative position. If that is so, respondent's proposed collection action would be impermissible under an abuse of discretion standard as well as under a de novo standard. We accordingly do not need to decide whether petitioners' challenge involves a dispute concerning their "underlying tax liability" as to which a de novo standard of review would apply.

C.    Designated Payment

Respondent agrees that the law generally allows taxpayers to designate how voluntary tax payments should be applied. Respondent does not dispute that Tryco's tax payments were "voluntary," and he appears to agree that Tryco's directions, if followed, would result in applying the $91,223 as a credit toward

---

⁶(...continued)
reasoning that "the validity of the underlying tax liability, i.e., the amount unpaid after application of credits to which petitioner is entitled, * * * [was] properly at issue"), with Kovacevich v. Commissioner, T.C. Memo. 2009-160, 98 T.C.M. (CCH) 1, 4 & n.10 (applying abuse of discretion standard where taxpayer challenged application of tax payments, reasoning that "questions about whether a particular check was properly credited to a particular taxpayer's account for a particular tax year are not challenges to his underlying tax liability"), and Orian v. Commissioner, T.C. Memo. 2010-234, 100 T.C.M. (CCH) 356, 359 (same). See also Freije v. Commissioner, 125 T.C. 14, 23, 26-27 (2005); Comfort Plus Health Care, Inc. v. Commissioner, 2005-2 U.S. Tax Cas. (CCH) para. 50,494, at 89,175-89,176 (D. Minn. 2005) (applying abuse of discretion standard where taxpayer in CDP case challenged IRS failure to credit overpayments).

petitioners' 1992-95 income tax liabilities. Respondent's position is that the IRS policy of honoring designations, while well established, is limited. This policy is assertedly confined to designations of tax payments to a particular tax period or to a particular type of tax, e.g., to "trust fund" tax liabilities as opposed to corporate income tax liabilities. According to respondent, there is no legal basis for insisting that the IRS honor the designation of a delinquent employment tax payment toward the income tax liability of a specific employee.

We can discover no such limitation on the IRS' obligation to honor the designation of voluntary tax payments, either in published IRS administrative pronouncements or in the judicial decisions that have cited and relied upon them for the past 30 years. As explained more fully below, we accordingly reject respondent's argument and hold that petitioners should have received a credit of $91,223 toward their 1992-95 income tax liabilities by virtue of Tryco's designated payments.

1. In Rev. Rul. 73-305, 1973-2 C.B. 43, the IRS announced its position that voluntary partial payments of assessed tax, penalties and interest are to be applied as the taxpayer designates. This rule was made applicable "to all taxes under the Internal Revenue Code of 1954, except Alcohol, Tobacco, and Firearms taxes, withheld employment taxes, and collected excise taxes." Id.,

1973-2 C.B. at 44. The IRS revised and expanded this position six years later in Rev. Rul. 79-284, 1979-2 C.B. 83. It there held that the designation policy announced in Rev. Rul. 73-305, supra, "applies to withheld employment taxes and collected excise taxes where the taxpayer provides specific written instructions for the application of a voluntary partial payment." Only where "no designation is made by the taxpayer" would the IRS apply the payment "in a manner serving its best interest."

Revenue Ruling 79-284, supra, was superseded, after the tax payments in issue, by Rev. Proc. 2002-26, 2002-1 C.B. 746, which was published to "update and restate" the position announced in the prior ruling. It similarly holds that, when "the taxpayer provides specific written directions as to the application of * * * [a voluntary partial] payment, the Service will apply the payment in accordance with those directions." The Internal Revenue Manual (IRM) defines a "designated payment" as "a voluntary * * * [ payment] that the taxpayer has directed to be applied in a particular manner, i.e., a specific period, kind of tax, tax portion, interest, etc." IRM pt. 5.1.2.4 (Jan. 22, 2001) (current version at IRM pt. 5.1.2.8 (Aug. 15, 2008)).

The principle that the IRS must honor a taxpayer's designation of a voluntary tax payment has been recognized repeatedly by the courts. We have

discovered no case addressing the specific fact pattern involved here, where a taxpayer designates a voluntary payment toward the income tax liability of a named third party. However, the Commissioner's published position concerning designated payments refers broadly to voluntary payments that a taxpayer "has directed to be applied in a particular manner," IRM pt. 5.1.2.4, and the courts have expressed their understanding of the IRS policy in similarly unqualified terms.

The Supreme Court has stated: "IRS policy permits taxpayers who 'voluntarily' submit payments to the IRS to designate the tax liability to which the payment will apply." United States v. Energy Res. Co., 495 U.S. 545, 548 (1990); see Slodov v. United States, 436 U.S. 238, 252 n.15 (1978) (noting exception where payment "results from enforced collection methods"). These cases are appealable to the Court of Appeals for the Fifth Circuit. See sec. 7482(b)(1)(A). The Court of Appeals has stated: "[I]f a taxpayer directs that a payment be applied in a certain manner, the IRS must abide by the taxpayer's direction." Wood v. United States, 808 F.2d 411, 416 (5th Cir. 1987). The Courts of Appeals for the Third, Sixth, Seventh, Ninth, and Tenth Circuits have recognized the duty of the IRS to respect the taxpayer's designation of a voluntary payment.[7] This Court has

_____

[7]See IRS v. Kaplan (In re Kaplan), 104 F.3d 589, 599 (3d Cir. 1997) ("[A]ny payment made on the corporate account involved is deemed to represent

(continued...)

consistently done the same. See, e.g., Worthan v. Commissioner, T.C. Memo. 2012-263, at *3 n.3 ("[I]f the IRS has assessed additional taxes, penalties, and interest 'at the time the taxpayer voluntarily tenders a partial payment that is accepted by the Service and the taxpayer provides specific written directions as to the application of the payment, the Service will apply the payment in accordance with those directions.'") (quoting Rev. Proc. 2002-26, sec. 3, 2002-1 C.B. at 746); Cooley v. Commissioner, T.C. Memo. 2012-164, 103 T.C.M. (CCH) 1875, 1876 n.1 ("A taxpayer making a voluntary payment can designate the liability she wants her payment to cover, and the IRS will apply the payment as the taxpayer directs.").[8]

---

[7](...continued)
payment of the employer portion of the liability * * * unless there was some specific designation to the contrary by the taxpayer."); Davis v. United States, 961 F.2d 867, 878 (9th Cir. 1992) ("When a taxpayer submits a voluntary payment, she may designate to which liability the money should be applied."); Lorenzini v. United States, 946 F.2d 895, 1991 WL 203086, at *4 (6th Cir. 1991) ("Voluntary partial payments * * * will be applied to withheld employment taxes * * * as designated by the taxpayer."); Muntwyler v. United States, 703 F.2d 1030, 1032 (7th Cir. 1983) ("When a taxpayer makes voluntary payments to the IRS, he has a right to direct the application of payments to whatever type of liability he chooses.") (citing O'Dell v. United States, 326 F.2d 451, 456 (10th Cir. 1964)).

[8]In all of these cases, the duty of the IRS to honor a taxpayer's designation of a voluntary payment was common ground. The disputes focused on whether the payment was "voluntary" and/or whether the taxpayer had made a proper and unambiguous "designation." See, e.g., Kaplan, 104 F.3d at 599 (concluding that

(continued...)

Respondent notes correctly that many of these cases involved "trust fund taxes," where the dispute centered on whether an employer's tax payment should be applied to its corporate income tax obligations or rather to employment tax obligations for which its officers and employees would have individual liability as "responsible persons."[9]  Respondent acknowledges the IRS' policy of honoring an employer's designation of voluntary payments between these two types of taxes. In his view, however, petitioners inappropriately "seek to extend this policy beyond designating a payment for a specific type of tax and argue that an employer should be allowed to designate a payment as the withholding of a particular employee."  According to respondent, designated employment tax payments can be applied only to an employer's <u>overall</u> employment tax

---

[8](...continued)
IRS can generally apply payment as it wishes "in the absence of a written designation" by employer); <u>IRS v. Energy Res. Co. (In re Energy Res. Co.</u>), 871 F.2d 223, 230 (1st Cir. 1989) (concluding that payment made pursuant to bankruptcy court order was not "voluntary"), <u>aff'd on other grounds</u>, 495 U.S. 545 (1990); <u>Wood</u>, 808 F.2d at 417 (concluding that employer had made "no specific designation" of its payment).

[9]Because section 7501(a) requires employers to hold taxes collected and withheld from employees' wages "in trust for the United States," these taxes are commonly referred to as trust fund taxes.  <u>See</u> <u>Slodov</u>, 436 U.S. at 242-243. Officers or employees who are responsible for collecting the tax are commonly referred to as "responsible individuals" or "responsible persons."  <u>Energy Res. Co.</u>, 495 U.S. at 546-547; <u>see</u> <u>infra</u> pp. 31-33.

obligations. No authority assertedly exists for allowing an employer "to designate payments as withholding for a specific employee," so that employees remain liable "for their separate and independent income tax obligations" notwithstanding the employer's designated payment thereof.

We find no such gloss on the IRS' policy of honoring designated tax payments in its published administrative position, which it is obligated to follow, Rauenhorst v. Commissioner, 119 T.C. 157, 171-173 (2002), or in the judicial decisions that have repeatedly recognized this obligation. This supposed gloss, moreover, is at odds with established practice in employment tax refund litigation and with inferences logically drawn from section 6331.

Generally, a taxpayer must pay the entirety of an assessed tax or proposed deficiency in order to support jurisdiction of a refund suit under 28 U.S.C. sec. 1346 (2006). See Flora v. United States, 362 U.S. 145, 177 (1960). However, under a doctrine first enunciated in Steele v. United States, 280 F.2d 89, 91 (8th Cir. 1960), a well-established exception to this full-payment rule exists with respect to "divisible taxes." The employment tax for which an employer is liable under subtitle C is a "divisible tax" because each portion of the tax relates to a specific employee and calendar quarter. An employer is permitted to pay a divisible portion of its employment tax liability, file a refund claim for that

amount, and commence refund litigation under 28 U.S.C. sec. 1346(a)(1) when the claim is denied. The United States then typically counterclaims for the balance of the tax in dispute. See, e.g., Univ. of Chi. v. United States, 547 F.3d 773, 785 (7th Cir. 2008); Korobkin v. United States, 988 F.2d 975, 976 (9th Cir. 1993); Boynton v. United States, 566 F.2d 50, 51-52 (5th Cir. 1977); CCA 201315017 (Apr. 12, 2013).

This "divisible tax" litigation procedure is beneficial to employers, enabling them to seek resolution of an employment tax dispute by means of a test case, without the necessity of paying up front the entire amount at issue for numerous workers. This procedure is commonly used to establish the status of particular workers, or a particular class of workers, as "employees" or "independent con-tractors." See, e.g., Bruecher Found. Servs., Inc. v. United States, 383 Fed. Appx. 381 (5th Cir. 2010); Smoky Mountain Secrets, Inc. v. United States, 910 F. Supp. 1316 (E.D. Tenn. 1995); Theodore D. Peyser, Refund Litigation, 631-4th Tax Mgmt. (BNA) at A-5 ("[T]o sue for a refund of employment tax, one must first pay the tax or penalty assessed as to one employee for a single quarter.").

Section 6331 governs levy and seizure of property to satisfy Federal tax obligations. Section 6331(i)(1) provides that no levy shall be made against an employer "with respect to any unpaid divisible tax during the pendency of any

proceeding" brought by the employer "for recovery of any portion of such divisible tax." A "divisible tax" for purposes of this section includes employment taxes imposed by subtitle C. <u>See</u> sec. 6331(i)(2)(A). This bar against levies applies where the decision in the pending refund suit "would be res judicata with respect to such unpaid tax" and where the employer "would be collaterally estopped from contesting such unpaid tax by reason of such proceeding." Sec. 6331(i)(1)(A) and (B).

In order for this statutory scheme to function as Congress intended, an employer will often find it necessary to designate employment tax payments toward the tax liabilities of specific employees. A large company with complex operations may have multiple locations with distinctive activities. It may have multiple classes or categories of workers who manifest varying indicia of "employee" and "independent contractor" status or who receive different kinds of payments that may or not be "wages."

Collateral estoppel applies only where the facts actually litigated are the same as the facts in the collateral proceeding.[10] Thus, in order to ensure that a

---

[10]<u>See</u> <u>Parklane Hosiery Co. v. Shore</u>, 439 U.S. 322, 326-329 (1979) (discussing collateral estoppel); <u>Alexander v. Commissioner</u>, 224 F.2d 788, 791-793 (5th Cir. 1955) (same), <u>aff'g in part, rev'g in part</u> 22 T.C. 318 (1954); <u>Peck v. Commissioner</u>, 90 T.C. 162, 166-167 (1988) (an important factor when applying
(continued...)

decision in the refund suit will have collateral estoppel effect with respect to all affected workers, the employer must ensure that it has paid employment taxes for at least one worker in each distinct employment class. If an employer fails to establish full payment of employment taxes for at least one affected worker for one calendar quarter, the case may be dismissed for lack of jurisdiction. See, e.g., 47th Street Setting Corp. v. United States, 84 A.F.T.R.2d (RIA) 99-6691 (S.D.N.Y. 1999) (dismissing refund suit where employer had two classes of workers and failed to pay full employment taxes for one calendar quarter for any worker whom the IRS had reclassified as an employee).[11]

---

[10](...continued)
collateral estoppel is whether "[t]he issue in the second suit * * * [is] identical in all respects with the one decided in the first suit"), aff'd, 904 F.2d 525 (9th Cir. 1990).

[11]Accord Gerald A. Kafka & Rita A. Cavanagh, Litigation of Federal Civil Tax Controversies, para. 15.03[2], at 15-13 (2d ed. 2010), available at 1999 WL 629587, at *4 ("[T]he employee or transaction to which the tax relates must be representative of all employees or transactions for which the tax was assessed. * * * If the employee or the transaction is not representative, the collateral estoppel effect of any judgment could be minimized."); see also Spivak v. United States, 254 F. Supp. 517, 522-523 (S.D.N.Y. 1966) (finding that taxpayers failed to prove they had paid the employment taxes for one employee for one quarter and dismissing complaint), aff'd, 370 F.2d 612 (2d Cir. 1967); Gerald A. Kafka, Refund Litigation in the U.S. District Court and U.S. Court of Federal Claims, ST009 ALI-ABA 325, 327 ("Care must be taken to ensure that the payment does in fact correspond to a single employee or event that is in issue.").

Where an employer has distinct employment classes, it is hard to see how it can meet the threshold requirement to prove it has paid taxes for at least one employee in each contested class unless it can designate payments toward the tax liabilities of specific employees--i.e., designate which "portion[s] of such divisible tax" are being remitted. Sec. 6331(i)(1). And it is hard to see how refund litigation could be instituted on the terms Congress contemplated unless the IRS is bound to honor the employer's designation. The IRM explicitly defines a "designated payment" to include a voluntary payment that the taxpayer directs to be applied to "a specific * * * tax portion." IRM pt. 5.1.2.4.

2. Ensuring that the IRS honors taxpayer designations of voluntary tax payments is essential to vindicate the policy against double collection of the same tax. In the instant cases, there is a single underlying tax liability--petitioners' individual income tax liabilities for 1992-95. The Code provides two ways to collect this tax: from the employer as withholding tax under sections 3402 and 3403, and from the employee when he files his annual Form 1040, U.S. Individual Income Tax Return. As the Supreme Court stated in Baral v. United States, 528 U.S. 431, 436 (2000): "Withholding and estimated tax remittances are not taxes in their own right, but methods for collecting the income tax." The principal liability for the income tax is borne by the taxpayer-employee under

section 1. The employer bears liability for this tax under section 3403, but it is a derivative liability arising from its status as a withholding agent.[12]

Such derivative liability for withholding agents is common in a multitude of Code settings. Section 3101(a) imposes a share of the FICA tax on the employee; section 3102 provides that this tax "shall be collected by the employer," who thus bears derivative liability for the employee's share of the FICA tax. Under section 3405, the payor of pensions and annuities bears derivative liability for the distributee's income tax. Under section 3406, a financial institution required to perform "backup withholding" on payments of interest and dividends bears derivative liability for the investor's income tax. In none of these contexts does the Code explicitly provide that the employee, distributee, or investor will receive, toward her principal liability, a credit for payments the payor makes toward its derivative liability. But the IRS allows such a credit, as it must, because failure to do so would result in double collection of the same tax.[13]

---

[12]See Whalen v. Commissioner, T.C. Memo. 2009-37, 97 T.C.M. (CCH) 1147, 1149 ("While we agree with respondent that the tax liability of an employer under sections 3403 and 7501 is independent of the liability imposed on the employee under section 1, we also agree with petitioner that these two liabilities are for the same income tax."); H.R. Doc. No. 78-237, at 5 (1943) (employment tax borne by employer is "not an additional tax--merely a collection device").

[13]Judge Holmes suggests in dissent that the Code does have an explicit
(continued...)

An analogous principle has been recognized in so-called responsible person cases. Section 6672(a) provides that, if an officer or employee responsible for withholding and collecting employment taxes from employees willfully fails to do so, he or she shall "be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over." This penalty is often called the "trust fund recovery penalty," because it provides a mechanism for collecting, from an employer's responsible persons, employment taxes that should have been collected and held "in trust for the United States." Sec. 7501(a); see Weber v. Commissioner, 138 T.C. 348, 357-358 (2012). In this setting, the employer bears principal liability under section 3403 for the trust fund taxes that

---

[13](...continued)
provision allowing credits for tax withheld from payments of pensions, annuities, interest, and dividends. See Holmes op. p. 51. This provision, he says, "is none other than the very same section 31" that we have discussed previously. Section 31, however, is entitled "Tax Withheld on Wages"; and section 31(a) is entitled "Wage Withholding for Income Tax Purposes." By its terms, section 31 does not apply to pensions and annuities under section 3405 or to interest and dividends under section 3406--except as it applies by analogy, which bolsters our point. Judge Holmes likewise points to no Code section that explicitly provides a credit to the employee for the employer's payment of employee FICA tax. Rather, he infers that the employee must be entitled to a credit from section 31.3102-1(d), Employment Tax Regs. ("Until collected from * * * [the employer] the employee also is liable for the employee tax with respect to all the wages received by him."). But not even this regulation provides an explicit credit for the employee when the employer pays the tax. Judge Holmes' inference that a credit must be available is reasonable precisely because the structure and logic of the Code's withholding provisions mandate such crediting to avoid double collection of the same tax.

should have been withheld, and the "responsible persons" bear derivative liability for those same taxes under section 6672.

In a "responsible person" situation, numerous individuals and/or entities may be liable for redundant penalties deriving from the same unpaid tax. See Commonwealth Nat'l Bank of Dallas v. United States, 665 F.2d 743, 758 (5th Cir. 1982). There is no Code provision that explicitly grants a credit to one person against his penalty assessment if the IRS later collects the tax directly from the employer or collects the penalty from others. But in practice such crediting does occur, under a longstanding IRS policy which recognizes that the section 6672 penalty is a method of collecting trust fund taxes once, not twice. See IRM pt. 1.2.14.1.3(2) (June 9, 2003) ("The withheld income and employment taxes * * * will be collected only once, whether from the business, or from one or more of its responsible persons."); id. pt. 8.25.1.5.1(5) (Dec. 7, 2012) ("Even though the Service may make assessments against more than one responsible person for a particular quarterly liability, it ultimately only collects the total amount once."). The Supreme Court recognized this policy 35 years ago in United States v. Sotelo, 436 U.S. 268, 279 n.12 (1978): "[I]t is IRS policy that the amount of the tax will

be collected only once. After the tax liability is satisfied, no collection action is taken on the remaining 100-percent penalties."[14]

This well-established IRS policy against double collection of trust fund taxes illuminates the proper disposition of the question presented here. Just as there is no Code provision explicitly mandating that an employer's (late) payment of employment tax must be credited toward a responsible person's liability for the section 6672 penalty, so too there is no Code provision explicitly mandating that an employer's (designated late) payment of employment tax be credited toward the designated employee's liability for income tax. But in both cases, despite the Code's silence as to the availability of a credit, the payment of the one necessarily

---

[14]Accord, e.g., USLIFE Tit. Ins. Co. of Dallas v. Harbison, 784 F.2d 1238, 1241 (5th Cir. 1986) ("[A]s a matter of policy, * * * [the Government] does not retain payments exceeding the underlying withholding tax delinquency."); Kelly v. Lethert, 362 F.2d 629, 635 (8th Cir. 1966) (Government is entitled to only one satisfaction of trust fund taxes); Weber, 138 T.C. at 358 & n.6 (2012) ("The IRS collects the trust fund liability no more than once."); Gutherie v. United States, 359 F. Supp. 2d 693, 697 (E.D. Tenn. 2005) ("Because the IRS is entitled to only one satisfaction of the trust fund tax liability, once it has obtained that satisfaction from the employer, it must abate all assessments against responsible individuals under section 6672."); Johnson v. United States, 203 F. Supp. 2d 416, 425 (D. Md. 2002) ("[E]ven absent the internal IRS policy, the agency * * * [is] not entitled to double recovery under section 6672.").

satisfies the other. The IRS must allow a credit in both situations to avoid double collection of the same tax.[15]

3. The outcome that we believe to be supported by judicial precedent and sound tax policy is likewise supported by common sense. Petitioners themselves supplied Tryco with the $91,223 at issue. They contributed these funds to their corporation, on the advice of their attorney, with explicit instructions that the funds be remitted to the IRS and designated toward payment of their 1992-95 income tax liabilities. These funds were paid to the IRS pursuant to petitioners' plea agreement with the Department of Justice, which stated that they "may be required to make full restitution for the losses sustained by the

---

[15]Judge Holmes contends that petitioners cannot "point to a single credit under current law that would cause Tryco's payment to erase their own income tax liability," and that the Court has therefore "mint[ed] a new credit nowhere to be found in the Code." See Holmes op. pp. 42, 48. His opinion proceeds from the erroneous premise that a "credit" to a taxpayer's account can arise only by virtue of a specific Code provision in ch. 1, subch. A, pt. IV, captioned "Credits against Tax." In fact, there is no section in the Code providing that a payment of tax shall be credited against the liability for that tax; but of course such payments must be so credited. If a person remits $100,000 to the IRS and designates it toward payment of his gift tax liability, the IRS would credit that payment toward his gift tax liability. If a grandson remits $100,000 to the IRS and designates it toward payment of his grandmother's gift tax liability, the IRS would (we hope) credit that payment toward his grandmother's gift tax liability. In both cases, the credit arises, not by virtue of a specific Code provision, but by virtue of the IRS' honoring the taxpayer's designation and crediting the account of the relevant taxpayer for the relevant tax.

Internal Revenue Service" as a result of their tax offenses. Petitioners successfully argued for probated sentences on the ground that they had remitted taxes to the IRS in excess of the "tax loss" determined in their plea agreements. Since these payments were intended as "restitution" for petitioners' tax offenses, those payments should logically be credited toward petitioners' liability for the 1992-95 tax years that were the subject of the criminal tax case. It would be inequitable and inconsistent with the premises of the plea agreement and sentencing for the IRS to insist on collecting this same tax again.

For these reasons, we hold that the IRS was obligated to honor Tryco's designation of its delinquent 1999-2000 employment tax payments to petitioners' income tax liabilities for 1992-95. Respondent's failure to honor this designation was an abuse of discretion. The $91,223 payments at issue, if properly credited to petitioners' account, would have fully discharged their 1992-95 income tax liabilities (excluding any applicable interest and penalties). The IRS therefore may not levy on their assets to collect this tax a second time.[16]

_____

[16]Judge Buch in dissent errs in suggesting that our Opinion sanctions "double-dipping" by Tryco. See Buch op. pp. 67-68. The $91,223 that Tryco remitted to the IRS in 1999-2000 consisted of delinquent employment taxes-- specifically, income taxes that were not deducted and withheld from its employees' wages contemporaneously but were being remitted five years late. Logically, these nonwithheld income taxes must be attributable to some employee

(continued...)

An important corollary of our holding concerns penalties and interest.

Section 6513(b)(1) provides that "[a]ny tax actually deducted and withheld at the source * * * shall, in respect of the recipient of the income, be deemed to have been paid by him on the 15th day of the fourth month following the close of his taxable year with respect to which such tax is allowable as a credit under section 31." The $91,223 at issue here was not "actually deducted and withheld at the source," and no credit therefor is allowable to petitioners under section 31. Tryco's designated payments thus result in a credit to petitioners' account as of December 1999 and June 2000 respectively, not as of April 15, 1996. Respondent accordingly may levy on petitioners' assets to collect any applicable interest and

---

[16](...continued)
on Tryco's payroll during the relevant tax years. In designating its payments, Tryco was simply identifying James and Sharon Dixon, rather than John and Sally Doe, as the employees to whose accounts these income tax payments should be credited. This is not "double-dipping." It is true that, by making these designated payments, Tryco was simultaneously discharging the Dixons' income tax liability under section 1 and its own withholding tax liability under section 3403. But this is what happens in the normal situation when the employer withholds income tax from its employees' wages and remits that tax to the IRS. As explained in the text, see supra p. 29, there is a single underlying tax liability involved in these cases-- petitioners' individual income tax liabilities for 1992-95. By remitting $91,223 to the IRS and designating it toward the Dixons' income tax liabilities, Tryco was simultaneously discharging the Dixons' principal liability and its own derivative liability for the same tax. We assume that Judge Buch would not characterize this as "double-dipping" if Tryco had remitted the tax timely, and we do not see why the characterization should be different when Tryco remits the tax late.

penalties.  Tryco likewise remains liable for penalties and interest.  <u>See</u> sec.

3402(d); sec. 31.6205-1(c)(3)(ii), Employment Tax Regs.[17]

<u>Appropriate decisions will be</u>

<u>entered</u>.

---

[17]We have no occasion in these cases to address the income tax consequences of these designated payments for petitioners' 1999 and 2000 tax years.  The regulations presuppose that, when nonwithheld taxes are paid to the IRS, an employer will normally seek reimbursement from the employee "on or before the last day of such year by deducting such amount from the remuneration of the employee, if any."  Sec. 31.6205-1(c)(4), Employment Tax Regs.  That obviously did not happen here.  Under these circumstances, Tryco's designated payments of petitioners' income tax liabilities could conceivably be characterized as corporate distributions governed by section 301(c) or as payment of additional wages (which might generate additional withholding tax liability).  <u>See</u> <u>Old Colony Trust Co. v. Commissioner</u>, 279 U.S. 716, 730-731 (1929) (employer's payment of employee's income tax obligation in consideration of employee's services for employer constitutes income to employee).  We likewise have no occasion to address the income tax consequences for Tryco of its 1999-2000 payments aggregating $91,223 on petitioners' behalf.  Finally, we have no occasion to consider the income tax consequences for an employer that, unlike Tryco, makes a nondesignated payment of delinquent employment taxes under section 3403.  <u>Compare</u> <u>L & L Marine Serv., Inc. v. Commissioner</u>, T.C. Memo. 1987-428 (employer's payment of employees' share of delinquent employment taxes not deductible under section 162(a) either as compensation or as an ordinary and necessary business expense), <u>with</u> IRS Field Service Advisory 200025002, (June 23, 2000) (employer's payment of employees' share of delinquent employment taxes deductible under section 162(a) as an ordinary and necessary business expense where payment achieved a proximate business benefit for employer).  The only issue before us is whether the IRS may levy to collect petitioners' income tax liabilities for 1992-95.

Reviewed by the Court.

COLVIN, FOLEY, GALE, GOEKE, WHERRY, KROUPA, GUSTAFSON, PARIS, MORRISON, and KERRIGAN, JJ., agree with this opinion of the Court.

VASQUEZ, J., did not participate in the consideration of this opinion.

GOEKE, J., concurring:  I agree with the opinion of the Court and write simply to clarify that the credibility of petitioners' testimony played no role in the opinion of the Court because the issues addressed are legal, not factual. Credibility of their testimony was important only to the factual findings Judge Holmes made as the trial Judge in the companion Memorandum Opinion also released today.

The Court is obviously aware of petitioners' 1999 plea agreement with the U.S. attorney, which is discussed in both the opinions issued today.  The opinion of the Court only referenced the plea agreement as the source for the "tax loss" figure discussed in both opinions.  There were no credibility findings attached to that reference.  In Judge Holmes' Memorandum Opinion, the plea agreement was used in connection with the best evidence rule to serve as "other evidence" that reflects the content of Tryco's missing payroll documents.  Judge Holmes also made a credibility finding with regard to petitioners' testimony.

The Court is also aware that James Dixon pleaded guilty to Federal tax evasion for 2006, United States v. Dixon, No. 4:12CR00521-001 (S.D. Tex. Apr. 1, 2013), the same year petitioners testified that they knew nothing about the nonpayment of withheld taxes for tax years 1992-95.  Similarly, Sharon Dixon was

also later convicted for subsequent Federal tax crimes.  <u>United States v. Dixon</u>,

No. 4:12CR00522-001 (S.D. Tex. Feb. 13, 2013).

WHERRY, KROUPA, MORRISON, and LAUBER, <u>JJ</u>., agree with this concurring opinion.

HOLMES, J., dissenting:  Imagine that a check arrives at the IRS from John Green with a letter that says "This check is to be applied to my tax bill for 2013. Also, please credit my friend Joe Black's account for the same amount.  He gave me the money that let me write this check and I'd like him to benefit as well."  If things work as they should at the Service, Green's account should be credited; and the suggestion that the same check should be credited for Joe Black's account would cause some tittering, or maybe just a puzzled look on the face of the IRS employee opening the envelope.

And that's more or less what happened here.  Tryco sent in a few dozen checks together with letters saying to please pay the company's tax bill and designated them as well as payments of "withheld income taxes" for one or the other of the Dixons.  The IRS credited Tryco's giant unpaid employer-tax liability, but did not reduce the Dixons' large income-tax liability.

The majority is quite right that the Dixons don't get a credit under section 31 for payments Tryco made that were not "actually withheld at the source."  But what the majority gets wrong is the way the crediting scheme works.  Employers get a credit under section 3402(d) for employee payments whenever they're made, but employees get a credit for employer payments only when those payments are "actually * * * withheld at the source."  Sec. 1.31-1(a), Income Tax Regs.  Here,

we all agree that the payments were not actually withheld at the source. That should be good enough to answer the question before us, because the plain language of the Code and regulations does not provide the Dixons with a credit. Dissatisfied with this plain language, the majority sets up its own forge and mints a new tax credit nowhere to be found in the Code.

I must respectfully dissent, because this Court doesn't have the power to replace a clear and explicit crediting scheme with one that we deem "fair".

## I.

Had the Dixons sent the money in themselves and told the Commissioner to apply the payments toward their own income-tax liability, they'd have a credit for their payments (but might still be on the hook for leftover penalties or interest), and so would Tryco, under section 3402(d). But the Dixons instead sent money to Tryco for Tryco to send to the IRS. Tryco sent that money to the IRS voluntarily and told the Commissioner to apply it towards Tryco's own unpaid employment taxes. It's what the Dixons and Tryco told us they intended to do, and it's what they actually did. The Commissioner then obeyed those instructions.

What colors these cases, and makes the Dixons look sympathetic, is that the money Tryco paid is money that the Dixons contributed to the corporation after they took out a home-equity loan for almost a half-million dollars.  It was this money that they sent to Tryco, and had Tryco pay over to the IRS in December 1999.  The letters that accompanied the payment told the IRS exactly where to put it:  towards "[Form] 941 taxes of the corporation * * * to be applied to the withheld income taxes" of James R. Dixon or Sharon Dixon for each quarter of the 1992 through 1995 tax years.  The "memo" lines on the checks themselves said, "Designated Payment of 941 Taxes" for each Dixon.  The letter that Tryco sent along with the June 2000 payment said something similar:  It was a "payment of [Form] 941 taxes of the corporation for calendar quarter 9504,[1] and which represents the withheld income taxes of employee James R. Dixon and employee Sharon Dixon."  The Dixons couldn't have been much more clear--Form 941 is the *Employer's* Quarterly Federal Tax Return, and they told the IRS to pay the taxes "of *the corporation*," the same entity that formally sent along the payment.  The Dixons did ask the IRS to apply the payments to the portion of Tryco's employment-tax bill that was attributable to Tryco's failure to withhold taxes from James's and Sharon's wages.  But that isn't the same thing as asking the IRS to

[1] In IRS numerology, 9504 means the fourth quarter of tax year 1995.

apply the payments directly towards the Dixons' individual income-tax liabilities, because Tryco was asking the IRS to apply the payments toward a specific part of *Tryco's* tax bill.

We even have testimony from Larry Campagna, the Dixons' tax attorney, saying that the Dixons knew that they had a choice--pay their own taxes directly, or have Tryco pay its own taxes, specifically those attributable to underwithholding for the Dixons. And he explained why the Dixons decided to pay Tryco's liability rather than their own. Campagna stated that he was afraid that

> had Mr. and Mrs. Dixon remitted the income taxes directly for their account, then the 941 liability for Tryco would not have been reduced by the payment, and the Government would have been asking for a double collection of the same money on the income tax side and the employment tax side.[2]

There was something else here: Had the Dixons simply sent the money in and told the IRS to apply the payments towards their own income-tax liabilities, they still would've been on the hook for all of the interest and penalties that had accrued between the due dates of the original returns--April 1993, 1994, and 1995--and the dates that they finally paid up in December 1999 and June 2000.

---

[2] That statement implies a misunderstanding of section 3402(d), which, by giving Tryco a credit for the Dixons' payment of their own taxes, would have prevented "double collection" of the remitted amount.

See sec. 6622(a). By instead contributing the money to Tryco--their employer--and then having Tryco pay it as employment tax, the Dixons hoped that the IRS would treat the payments as the IRS treats normal withholding payments, which would then erase many years of interest and penalties.[3] That's why they chose the indirect route.[4]

We also have the Dixons' briefs, which say that the Dixons gave "detailed written instructions (on the checks and in the cover letters)," that "unequivocally provided" for how the IRS was to apply their payments, and also say "[t]he IRS did not have to guess how Tryco wanted the payments applied." They reiterate that those instructions said that the payments were for "Form 941 taxes of the

---

[3] Section 31(a)(1) provides a credit to employees against their income tax obligation with respect to their wages if that tax is "deducted and withheld at the source," even if their employer failed to remit it to the government. Sec. 1.31-1(a), Income Tax Regs. That "amount so withheld during any calendar year shall be allowed as a credit for the taxable year beginning in such calendar year." Sec. 31(a)(2). Thus, the effect of the Dixons' position would let Tryco's late payment of the withholding tax not only satisfy their income-tax debt, but also cancel the portion of that debt that consisted of compounded interest.

[4] Campagna testified that "I don't think that I was concerned about the interest." As the trier of fact in these cases, I did not find this particular part of his testimony credible. The IRS transcripts show that the IRS finally got around to crediting the Dixons' accounts in April or May 2003. By that point over $530,000 of interest had accrued--almost 90% of the original tax reflected on the transcripts.

corporation for all quarters during 1992-1995," specifically those attributable to the withheld income taxes of the Dixons.

So we know what the Dixons actually asked for in their letters--for the IRS to apply the payments towards Tryco's employment taxes--and we know that's exactly what they meant to do, because their lawyer explained why, and their briefs hammered it home. Nevertheless, the majority actually appears to come to two conflicting conclusions about what Tryco asked the IRS to do with the money. It argues both that the Commissioner should have reduced the Dixons' income-tax debt to the extent that Tryco paid its own employer-tax debt; and that Tryco's payment of that debt was also creditable to the Dixons as payment of restitution.

I'll address each in turn.

## II.

I agree with the starting point of the majority's first argument--there is overwhelming authority for the proposition that a taxpayer who submits a voluntary payment may direct which of his taxes that payment should be credited to. I also don't doubt that one person can pay another person's taxes. But what I can't agree to is the majority's combination of these two simple propositions to allow a taxpayer to designate that its payment should reduce *both* its own tax debt *and* the debt of a third party. And remember as well that the Dixons' lawyer wrote

the IRS, after these payments were made, that he wanted them rejiggered to be for slightly different amounts and periods.

But the majority clearly errs in finding that the IRS did not do exactly what Tryco asked it to. According to the IRS transcripts in the record, the Commissioner applied the payments to Tryco's employment-tax liability, and gave the Dixons a section 31 credit for their income-tax liability. (The transcripts are typically opaque about this--they don't say anything about section 31. But they do show that the Commissioner abated interest that accrued between the original due dates of the return and the dates of the later payments, and a direct credit to the Dixons' income taxes wouldn't have reduced their outstanding interest.[5]) He applied the payment exactly as Tryco asked--toward the outstanding employment taxes of the corporation, specifically those attributable to the Dixons. If he hadn't, the Dixons wouldn't have ever gotten that mistaken section 31 credit.

The majority defends at length--and with copious citations--Tryco's right to direct the IRS to apply its voluntary payment towards a specific portion of its own tax liability. There's nothing wrong with this--a company's employer tax has long been seen by the courts and the Commissioner to be the aggregation of numerous

---

[5] The Dixons' transcripts also show that the Commissioner later realized his mistake and took the credits and abatements away.

quarters of tax for numerous employees. It's convenient to pay it all in one lump sum every so often, but an employer's total employer-tax liability is very much the sum of a large number of smaller liabilities. But assuming that Tryco's payment was properly applied to its own employment-tax bill, and specifically that portion that should've been withheld from the Dixons, the Dixons still can't point to a single credit under current law that would cause Tryco's payment to erase their own income-tax liability.[6]

The reason is that employment taxes and income taxes are welded together by detailed and specific language in the Code and regulations. Section 3403 says "[t]he employer shall be liable for the payment of the tax required to be deducted and withheld under this chapter [chapter 24, sections 3401-3406], and shall not be liable to any person for the amount of any such payment." Section 31.3403-1, Employment Tax Regs., emphasizes that it is employers which are "required to deduct and withhold the tax under section 3402" and which are liable "for the

---

[6] The Dixons need a credit under the Code because they want credit for an amount paid toward another taxpayer's--Tryco's--tax bill. They wouldn't need a Code-based credit if they had sent in the payments toward their own tax bill. This bit of confusion comes up because "credit" can mean two different things in tax law. It can mean amounts subtracted from the amount of tax otherwise owed (as is the case here), or it can mean the reduction in unpaid liability that occurs when a taxpayer pays his own tax and his account is "credited." See Kovacevich v. Commissioner, T.C. Memo. 2009-160, 2009 WL 1916351, at *5 n.9.

payment of such tax *whether or not it is collected from the employee* by the employer." (Emphasis added.)

The employer's tax liability under section 3403 is, in other words, independent of the employee's liability under section 1 and section 61(a)(1) to pay tax on the same wages. But what happens if the employee pays the tax? The answer is that the employer is off the hook--section 3402(d) provides

> If the employer, in violation of the provisions of this chapter, fails to deduct and withhold the tax under this chapter, and thereafter the tax against which such tax may be credited is paid, the tax so required to be deducted and withheld shall not be collected from the employer * * *.[7]

See also W. Mgmt., Inc. v. Commissioner, 176 Fed. Appx. 778, 782 (9th Cir. 2006) (remanding case for us to consider in the first instance whether section 3402(d) provided employer with any relief from collection of income taxes paid by

---

[7] Section 3402(d) anticipates the concern about double collection of the same tax that we expressed in Whalen v. Commissioner, T.C. Memo. 2009-37, 2009 WL 383019, at *3, where we suggested (in what is probably dicta) that an employer's actual payment to the IRS of tax that the employer should have withheld "could plausibly be characterized as withholding tax under chapter 24 with a corresponding section 31 credit being allowed to a proper recipient for an appropriate year." Section 3402(d) tells us that, to the contrary, the credit applies under the reverse circumstances, i.e., the *employer* receives a credit for the *employee's* actual payment of tax that the employer should have withheld. But it nonetheless remains true that the employer's liability under sections 3402(a) and 3403 for withholding taxes is separate and distinct from the employee's liability for income taxes under section 61.

employee, and if so, to compute reduction in employer's deficiency), <u>aff'g in part, remanding in part</u> T.C. Memo. 2003-162.

The Code doesn't have a section like 3402(d) that could rescue employees.[8] Without one, an employee doesn't get a credit on his income-tax liability just by proving that the employer later paid the tax it failed to withhold.[9] The Code does have section 31, but it's limited--an employee's right to a withholding credit depends on whether the tax has "actually been withheld at the source" by the employer. Sec. 1.31-1(a), Income Tax Regs. We all agree that wasn't done here. Which should have meant that we all agree that the Dixons don't meet the requirements to get the only credit that the Code provides in this situation.

Not to be discouraged by the lack of any actual credit in the Code to which the Dixons are entitled, the majority makes one up. As support for this new judge-

---

[8] Congress knows how to help employees when it wants to. Section 4999(c) requires an employer who pays the 20% excise tax on excess golden-parachute payments to treat it as additional income-tax withholding. That assures the employee of a credit under section 31(a) and, in effect, keeps the Commissioner from collecting twice.

[9] Section 3402(d) may, as a practical matter, discourage the Commissioner in some cases from pursuing the employee for taxes he's already collected from the employer, but if it happens the Commissioner will abate the employ*er*'s taxes administratively. <u>See</u> Internal Revenue Manual pt. 4.23.8.4.2. (But, again, the Code makes this asymmetrical. There is no similar provision that lets an employee recoup payments that he's made when his employer later makes payments toward the same liability.)

made credit, the majority gives three examples of other withholding obligations--sections 3102, 3405, and 3406--and says that "[i]n none of these contexts does the Code explicitly provide that [a payee] will receive, toward her principal liability, a credit for payments the payor makes toward its derivative liability." See op. Ct. p. 30.

If this were a gap in the Code, the majority might have a point. But a closer look at the text shows that there are no gaps: Let's start with sections 3405 and 3406. The Code does "explicitly provide" credit for withholding under these sections, and it is in none other than the very same section 31 that's at issue in these cases. Section 31(a)(1) creates a credit for payees for amounts that payors "withheld as tax under chapter 24." Sections 3405 and 3406--just like section 3402--are all a part of chapter 24, which means that section 3405 and 3406 payees are also subject to all of the same pesky section 31 requirements. But there's no gap in the Code here--those payees should, like employees, get credits only when portions of the payments or wages they receive are "actually withheld at the source."

Section 3102, which involves the FICA (or Social Security) tax and which the majority also cites, works a bit differently. For most taxpayers, the primary obligation to collect and pay this tax is on the employer. See sec. 3102(a) (tax

collected from employer); sec. 31.3102-1(d), Employment Tax Regs. (employer "liable for the employee tax * * * whether or not it is collected from the employee"). The regulation makes clear that the employee is also liable for the tax only "[u]ntil collected from [the employer]." Sec. 31.3102-1(d), Employment Tax Regs. Thus, the majority is correct that the FICA tax doesn't work on a formal crediting system like the income tax, but only because, instead of *a credit*, there is a *reduction in the amount of the liability* itself.[10] As the employer pays, the employee's liability as defined by the Code and regulations correspondingly shrinks.

The majority's last analogy is to the trust fund recovery penalty imposed by section 6672. It claims this as yet another situation where, even though the Code doesn't require it, the IRS doesn't collect tax arising out of the same event from more than one person. Several individuals may become secondarily liable, under section 6672, for failure to discharge the same section 3402 employer withholding

---

[10] Congress did put something of a derivative liability for employ*er*s of high-wage earners into the Code in enacting a higher tax rate to help fund Obamacare. The Code now makes an employee liable for this higher FICA tax "[t]o the extent that the amount of any tax imposed by section 3101(b)(2) is not collected by the employer." Sec. 3102(f)(2) (added by the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, sec. 9015(a)(2), 124 Stat. at 871). But once an employee pays the tax, the Code expressly provides that "the tax * * * shall not be collected from the employer." Sec. 3102(f)(3).

tax liability. Every circuit court--including the circuit court to which these cases would likely be appealed--has concluded that this penalty is one that creates a joint and several liability among responsible parties. See Brown v. United States, 591 F.2d 1136, 1142 (5th Cir. 1979). While it is true that the IRS says it follows "a policy" of not collecting more than the total sum due it from all those found to be responsible parties, this "policy" simply restates a firm and deeply rooted background priniciple of common law; i.e., that against parties jointly and severally liable, "a partial satisfaction of one judgment will not prevent obtaining or enforcing another, although it is everywhere agreed that the amount received must be credited *pro tanto* against the amount to be collected." William L. Prosser & W. Page Keeton, Law of Torts 331 (5th ed. 1984); 2 Restatement, Judgments 2d, sec. 50(2), cmt. c. (1982) (same); 1 Restatement, Torts 3d, sec. 25(b) (2000) (same). Tax law may be the most florid and convoluted example of the displacement of the common law by statute and regulation, but even it can't completely overgrow the general legal principles that connect all the cozy specialized gardens of the law. So, if the Commissioner were ever to assert a right

to collect a joint and several debt more than once, he couldn't do so without a change in the Code or regulations.[11]

But the Dixons' cases do not feature an IRS "policy" and are not about joint and several liability; they are about separate and distinct employer (secondary) and employee (primary) liabilities: Tryco's section 3402 employer tax liability and the Dixons' section 1 and section 61 income-tax liability. Couples who file joint returns create joint and several liability; they might be startled to learn that we today are forcing them into such an intimate relationship with their employers. And, absent joint and several liability, I know of no Code section, regulation, or decided case that would preclude the Commissioner from pursuing an employee for unpaid income tax with respect to the same wages on which an employer owes employer taxes.

This is just not an area where there is any room left for judge-made law. The Code and regulations create an intricate crediting scheme for employment and income taxes. Employers get a credit for any employee payments, but employees

---

[11] Courts certainly acknowledge that delays in collection, complex statutes of limitation, and the possibility of taxpayers' bringing a statutory refund suit mean that the Commissioner isn't trying to collect twice until he's actually established his right to retain the funds that he's collected. See USLIFE Title Ins. Co. v. United States, 784 F.2d 1238, 1244-45 (5th Cir. 1986) (carefully explaining the need for a right to retain funds collected).

get a credit only when those payments have "actually been withheld at the source."

Sec. 1.31-1(a), Income Tax Regs. Withholding credits are usually an excellent

deal for employees--not only do they reduce an employee's net tax bill, but the

Code treats those taxes "as a credit for the taxable year beginning in" the calendar

year when they were withheld. Sec. 31(a)(2). If we were to hold that the Dixons

were entitled to a credit under section 31 on their 1992-95 taxes--that is, that those

amounts were "actually * * * withheld at the source"--even though Tryco made

the payments only years later, we would be allowing them to eliminate (because of

the retroactive crediting of that payment) liability for interest and additions to tax

and penalties that the Code computes on the basis of the time an employee's tax

has gone unpaid--despite the fact that the tax did in fact go unpaid for many years.

The Dixons knew about that trick when they chose to structure their payment

through Tryco for Tryco's own taxes, see supra notes 3 and 4 and accompanying

text, and I certainly wouldn't blame them or their lawyer for trying--these are

cases of first impression. And it sounds kind of plausible because of all that

caselaw and IRS guidance from situations where a taxpayer is allowed to choose

which of his own liabilities his money pays down. But there's just nothing in the

Code to support an extension of a general rule that "taxpayers can designate

liabilities" to situations where the liability involved is both their own and another's.

### III.

After defending at length Tryco's right to designate the payments toward its own employment-tax bill relating to a specific employee, the majority puzzlingly also finds that the Dixons actually provided "explicit instructions" that the funds were for "payment of [*the Dixons'*] 1992-1995 income tax liabilities." See op. Ct. p. 34 (emphasis added).

The majority hangs its recharacterization of Tryco's payments on the restitution language in the Dixons' February 7, 2000 plea agreements. In those agreements, the Dixons acknowledged that they "may be required to make full restitution for the losses sustained by the Internal Revenue Service as a result of the offenses of conviction."[12] But remember that Tryco had sent in the bulk of the payments--$571,917--back in December 1999 to reduce its employer-tax debt. This language in the Dixons' later plea agreement can be nothing more than their

---

[12] This is almost certainly form language–"the fact that the court may order the defendant to pay restitution" should be "included in [the] paragraph setting out [a] defendant's awareness of possible punishment." See United States Attorneys' Manual, Tax Resource Manual 19 n.2, available at http://www.justice.gov/usao/eousa/foia_reading_room/usam/title6/tax00019.htm (last visited July 8, 2013). In the actual judgments entered after the District Court accepted the plea deals, the boxes marked "restitution" are left unchecked.

acknowledgment that they might have to pay their own tax bill *after* they had already made Tryco pay down some of its own. Consider how odd this makes this part of the majority's holding--it's holding that the Commissioner abused his discretion by *not* ignoring the clear instructions Tryco actually included with the payment, because he should've known what Tryco actually wanted--if only he could've peeked into the future at a document from a third party (i.e., the Dixons) that was not yet in existence when Tryco sent in the bulk of its payments.[13]  It's bad enough to require the Commissioner's clerks to be mind readers, but with this holding we're requiring them to build time machines too.

## IV.

The majority glosses over some of the other tax consequences of its decision today.  The Dixons had to contribute $602,119 to Tryco because Tryco wasn't doing much business anymore.  The Dixons were controlling shareholders, and

---

[13] The Dixons submitted their final $30,202 payment on June 1, 2000, about four months after they signed the plea agreements.  Nevertheless, the Commissioner shouldn't be expected to disregard a taxpayer's specific instructions in favor of ambiguous language in a document belonging to a third party.  The same point is true of the Dixons' effort to get the Commissioner to rejigger crediting of the payments after Tryco had sent them in.  The Dixons asked the Commissioner to reallocate money that they'd originally designated to apply to Tryco's 1994 taxes-- $17,850 to 1992; $9,116 to 1993; and $22,981 to 1995.  The majority seems to let this work, too, even though there is no authority anyone has cited requiring the IRS to allow a taxpayer to later change its designation once it's made.

their capital contributions would have increased their bases in the Tryco stock. See secs. 351(a) (applies to controlling shareholder), 358(a)(1), 1012; see also sec. 1016(a); Commissioner v. Fink, 483 U.S. 89, 94 (1987) (same for noncontrolling shareholders); Love v. Commissioner, T.C. Memo. 2012-166, 2012 WL 2135598, at *9; sec. 1.1016-2(a), Income Tax Regs. Tryco's employment-tax burden is smaller to the extent of the payments that it made, but it is still so large that the company stock may still be worthless, manufacturing a tidy loss for the Dixons. When the Dixons eventually abandon or sell Tryco, they'll get a bigger loss than they otherwise would have because of their increased bases.

And we shouldn't forget that Tryco was the Dixons' employer. As the majority acknowledges, see op. Ct. note 17, employers that pay their employees' bills are treated as if they were paying wages instead, see Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 729 (1929). But Tryco's payments were in 1999 and 2000, meaning the Dixons have untaxed income for 1999 and 2000, years for which assessment is now barred by the statute of limitations (assuming that the Dixons began filing their tax returns on time). We also shouldn't forget that paying wages--this time in the form of paying tax bills--also comes with its own withholding tax obligations for Tryco under section 3403, which it, once again, won't have fulfilled.

V.

If the Dixons wanted to pay their own tax liability, they could have and should have sent the checks to the IRS directly, with a letter stating that the payments were for their own income-tax liability. That should have created a credit for Tryco under section 3402(d). Alternatively, the Dixons could have used Tryco as a mere agent to pay their own income-tax liability. What they could have gained from sending the money through their corporation first is unclear, but they'd still have their own tax bill wiped out, and Tryco's tax bill would be reduced an equal amount under section 3402(d). They'd just need to be clear about what debt they were trying to pay, and the IRS would obey. The Dixons did what they did because they were swinging for the fences--they wanted to reduce Tryco's employment-tax bill, reduce their own income-tax liabilities, bump up their bases in probably worthless Tryco stock, and use section 31 to erase many years of penalties and interest. I don't blame them for trying--the law was, and after today, will remain, unclear.

I do also acknowledge that in situations like this one, the result I'm advocating may seem harsh. But Congress in its wisdom created an asymmetric crediting scheme. If the Dixons had paid their tax debt directly, they would have created a credit for Tryco under section 3402(d) without qualification. But the

reverse isn't true; even though Tryco paid its tax debt with the Dixons' capital contribution, it can't create a credit for the Dixons because its payment was late. I do note that the money that the Dixons contributed to Tryco, and that Tryco then paid over, does reduce the giant employment and withholding tax debt that Tryco owes. (And that, if the Dixons were ever held to be responsible parties for the original nonpayment of Tryco's taxes, would reduce *that* part of their debt to the government.)

That may not be fair, or even logical, but it is unambiguously what the Dixons asked the IRS to do and what the unambiguous language of the Code requires here. This Court doesn't have the power to rewrite it or the unbridled discretion to do whatever we deem "fair". I must, respectfully, dissent.

HALPERN and BUCH, JJ., agree with this dissent.

BUCH, J., dissenting:  I join Judge Holmes' dissent, wherein he correctly observes that the relevant statutory scheme does not allow Tryco to designate a payment for its own benefit and also for the benefit of the Dixons.  I write separately to address two other sources of authority that the majority cites.

Administrative Authority

The majority cites a series of revenue rulings and a revenue procedure for the proposition that "voluntary partial payments of assessed tax, penalty and interest are to be applied as the taxpayer designates."  See op. Ct. p. 20.  This statement, so far as it goes, is unremarkable.  But the majority stretches that guidance well beyond its terms, and then, citing Rauenhorst v. Commissioner, 119 T.C. 157, 171-173 (2002), attempts to hold respondent to a position that is not taken in any of the cited guidance.

Where there is a linear progression of guidance, it is perhaps best to start at the beginning, which, in this instance, is an income tax ruling from 1947.  At the time, interest was deductible for individuals and businesses, and the IRS addressed the question of whether a taxpayer who made a lump-sum payment in compromise of tax, penalties, and interest could deduct interest.  Where that lump-sum payment was less than the principal deficiency, the IRS held that no part of that lump-sum

payment could be deducted as interest. I.T. 3852, 1947-1 C.B. 15. What is clear

is that this ruling dealt only with the question of interest deductions; it appeared

under the heading in the Cumulative Bulletin "SECTION 23(b).-- DEDUCTIONS

FROM GROSS INCOME: INTEREST."

Rev. Rul. 58-239, 1958-1 C.B. 94, likewise dealt with the issue of interest

deductions. That ruling reaffirmed I.T. 3852, supra. But it went on to explain that

an undesignated partial payment would be applied first to tax, then penalties, and

then interest. And where there are liabilities for multiple years, the payment

would be applied to the earliest year first. What does this have to do with the

designation of a payment? It was this ruling that began the IRS' practice of

allowing taxpayers to designate that their payments be applied to specific

liabilities. The rule was quite specific:

> Where additional taxes, penalty and interest are assessed for one or more years against a taxpayer whose income is reported on the cash method of accounting, a partial payment thereon tendered to and accepted by the District Director of Internal Revenue with specific directions by the taxpayer as to its application, will be applied, as a general rule, in accordance with such directions. The amount of interest satisfied by such a partial payment will be deductible in computing taxable income for the year in which the payment is made.

Rev. Rul. 58-239, 1958-1 C.B. at 95. This ruling addressed only the issue of the

deductibility of interest by a taxpayer making a partial payment. It had absolutely

nothing to do with the ability to designate a payment toward a third party's liability. Again, if the plain language of the ruling was not clear enough, the ruling appears in the Cumulative Bulletin under a section headed "SECTION 163.-- INTEREST" with a subheading "(Also Section 6601: 301.6601.1)", which is a reference to the Code section for underpayment interest. See Rev. Rul. 58-239, 1958-1 C.B. at 93-94.

Next came Rev. Rul. 73-305, 1973-2 C.B. 43, which superseded Rev. Rul. 58-239, supra. The issue in that ruling

> relates to the application, by the Internal Revenue Service, of a partial payment of tax, penalty, and interest, assessed for one or more taxable periods, made by a taxpayer regularly employing the cash receipts and disbursements method of accounting. The specific question is whether the interest, if any, satisfied by such payment, is deductible for Federal income tax purposes in the year in which it is paid.

Rev. Rul. 73-305, 1973-2 C.B. at 43. Again, the issue was interest deductions. And again, if the issue was not clear enough from the ruling itself, it was further emphasized by the major heading in the Cumulative Bulletin under which the ruling was printed: "Section 163.--Interest". Rev. Rul. 73-305, 1973-2 C.B. at 42. The subheading again narrowed it to "26 C.F.R. 1.163-1: Interest deduction in general." Id., 1973-2 C.B. at 43. As the Court notes, this ruling explicitly stated that it did not apply to withheld employment taxes.

That limitation was lifted with Rev. Rul. 79-284, 1979-2 C.B. 83. At the risk of being redundant, this ruling also falls under the heading "Section 163. --Interest" and the subheading "26 C.F.R. 1.163-1: Interest deduction in general."

Which brings us to Rev. Proc. 2002-26, 2002-1 C.B. 746. This is the last in the line of administrative guidance addressing this issue, and it superseded those that came before it. Its text continues to address the issue of the ordering of payments. The revenue procedure concludes:

> If any part of a payment is applied to interest under the rules set forth in this revenue procedure, the amount applied to interest is treated for purposes of § 163 of the Code as interest paid in the year in which the payment is made. Under § 163, interest paid or accrued in a taxable year may be deducted in calculating taxable income for the year except to the extent such interest is personal interest as defined in § 163(h) and § 1.163-9T(b)(2) of the Income Tax Regulations or is otherwise disallowed under applicable provisions of the Internal Revenue Code and Income Tax Regulations.

Rev. Proc. 2002-26, sec. 3.04, 2002-1 C.B. at 746.

What is clear throughout the history of these revenue rulings and this final revenue procedure is that the IRS was addressing one issue, and one issue only: the deductibility of a partial payment of tax, penalties, and interest. There is no statement in any of these revenue procedures that the IRS agrees to accept the designation of a payment against both the taxpayer's liability and that of a third party.

Rauenhorst rightly holds that the Commissioner should be held to positions taken in published guidance. But in that case, "Respondent's position * * * directly contradicted his long-standing and clearly articulated administrative position". Rauenhorst v. Commissioner, 119 T.C. at 171 (citing Phillips v. Commissioner, 88 T.C. 529, 534 (1987), aff'd, 851 F.2d 1492 (D.C. Cir. 1988)). Here, the majority forges a position that is neither longstanding nor clearly articulated by the Commissioner in any published guidance and then holds the Commissioner to that position. Rauenhorst does not go that far.

Judicial Authority

The majority's citation of judicial sources of authority starts with an unremarkable statement: "The principle that the IRS must honor a taxpayer's designation of a voluntary tax payment has been recognized repeatedly by the courts." See op. Ct. p. 21. And the Court then acknowledges: "We have discovered no case addressing the specific fact pattern involved here, where a taxpayer designates a voluntary payment toward the income tax liability of a named third party." Id. Unfortunately, the majority then cites a litany of cases as if they supported the Court's position. They do not.

The Court begins with United States v. Energy Res. Co., 495 U.S. 545 (1990). In that case, the Supreme Court held that a bankruptcy court has the

authority to designate to which among several liabilities a court-ordered payment must be applied. Citing the same administrative guidance discussed above, the Supreme Court merely observed what IRS policy permits--the designation of a voluntary payment. Id. at 548. The Supreme Court's holding is unrelated to that point; it held that the Bankruptcy Code gives bankruptcy courts broad authority to modify creditor-debtor relationships, including ordering the IRS to apply payments in a specific manner among the liabilities of the debtor. Id. at 549. This is not even analogous to the facts before us.

The Fifth Circuit authority cited by the majority is no more apt. In Wood v. United States, 808 F.2d 411 (5th Cir. 1987), the plaintiff argued that the IRS should have applied certain payments to withholding taxes and not to the employer's share of the Federal Insurance Contributions Act (FICA) taxes. The plaintiff lost on the facts; the court concluded that the payments had not been unambiguously designated to withholding taxes. But throughout the opinion, the Court of Appeals' focus is the application of a payment amongst the taxpayer's liabilities, not the liabilities of a third party. The paragraph discussing the application of voluntary payments makes this clear.

> It is well established that in the absence of a direction by the taxpayer the IRS can apply a payment to any outstanding tax liability of the taxpayer. The IRS has announced its intention to follow this practice

> in applying employment tax deposits.  This circuit has approved the application of corporate funds to FICA employers' tax liabilities before applying the funds to withholding taxes in the absence of a direction by the taxpayer.  But if a taxpayer directs that a payment be applied in a certain manner, the IRS must abide by the taxpayer's direction.

Id. at 416 (emphasis added; internal citations omitted).  Only by pulling this last quoted sentence out of context is the majority able to cite Wood for support.

In fact, all of the cases cited by the majority stand for the same unremarkable proposition:  when a taxpayer makes a partial payment, the taxpayer may designate that the payment be applied to specific liabilities amongst multiple outstanding liabilities of the taxpayer.  That is not the case before us.

Conclusion

Here, Tryco and the Dixons want to designate that a payment be applied simultaneously to two separate liabilities.  Judge Holmes' dissent correctly observes that such a designation is not supported by the statutory scheme.  It is also not supported by either administrative or judicial authority.  By using Rauenhorst to hold the Commissioner to a position he has never adopted, the

Court goes too far. And the caselaw provides no support for the double-dipping that the opinion of the Court allows. As a result, I must dissent.

HALPERN and HOLMES, <u>JJ</u>., agree with this dissent.