T.C. Memo. 2019-80

UNITED STATES TAX COURT

KELVIN R. CREWS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18940-16L.                                    Filed June 27, 2019.

R assessed trust-fund-recovery penalties against P regarding the employment taxes of two employers: (1) ES for the four quarters from 2Q 2008 to 1Q 2009 and (2) KC for the seven quarters from 2Q 2008 to 4Q 2009. P made administrative claims with R challenging the trust-fund-recovery penalties. The administrative claims were denied by a tax examiner.

P sent a letter to R to administratively appeal the trust-fund-recovery penalties. The letter referred to the seven quarters from 2Q 2008 to 4Q 2009. The letter denied that P had had any involvement in the financial matters of "ES/KC". P's administrative appeal was assigned to J, an Appeals officer. After several months, J determined to relieve P of P's liability for trust-fund-recovery penalties for KC for the seven quarters from 2Q 2008 to 4Q 2009. J wrote P a letter setting forth that determination.

R issued P notices of intent to levy to collect the assessed trust-fund-recovery penalties for ES for the four quarters from 2Q 2008 to

[*2]   1Q 2009.  P requested a collection-due-process hearing with the
Office of Appeals.  At the hearing P contended that J had determined
to relieve P of his liability for trust-fund-recovery penalties for ES for
the four quarters from 2Q 2008 to 1Q 2009.  The Office of Appeals,
in its collection-due-process capacity, determined that J had not made
a determination with respect to the trust-fund-recovery penalties for
ES.  Therefore, the Office of Appeals sustained the notices of intent
to levy.

      <u>Held</u>:  The collection-due-process determination of the Office
of Appeals is sustained.

<u>Keith Howard Johnson</u>, <u>Adam L. Heiden</u>, and <u>Michael P. Tyson</u>, for

petitioner.

<u>Randall B. Childs</u> and <u>A. Gary Begun</u>, for respondent.

MEMORANDUM OPINION

MORRISON, <u>Judge</u>:  This is a collection-due-process ("CDP") appeal

pursuant to section 6330(d)(1),[1] in which petitioner, Kelvin R. Crews, asks us to

---

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code of 1986, as amended and in effect for the relevant times, and all
Rule references are to the Tax Court Rules of Practice and Procedure.  Kelvin R.
Crews is referred to here as Crews.  The Commissioner of Internal Revenue is
referred to here as the IRS--the acronym for the Internal Revenue Service, the
agency which he heads.  The sec. 6672 trust-fund-recovery penalty is referred to
by the acronym TFRP.  Erosion Stopper, Inc., is referred to as Erosion Stopper.

[*3] review the July 28, 2016 determination by the IRS Office of Appeals to sustain a proposed levy to collect section 6672 trust-fund-recovery penalties assessed against him for failing to collect and pay the trust-fund employment taxes of Erosion Stopper, Inc., for the last three quarters of 2008 and for the first quarter of 2009. We sustain the determination.

## Background

The Court granted the parties' joint motion to submit the case without trial under Rule 122. Our findings of fact are based on stipulations of fact executed by the parties and on the exhibits attached to the stipulations of fact.

Crews resided in Florida when he filed his petition.[2]

### Erosion Stopper and K.C. Earthmovers

Crews ran a chicken farm on his family's homestead near Macclenny, Florida. He supplied chickens under contract to Tyson Foods, Inc. His wife, LouAnn Crews, was a full-time registered nurse who was employed at a long-term care facility.

---

[2]Any appeal of the decision in this case will be heard by the U.S. Court of Appeals for the Eleventh Circuit (unless the parties stipulate another circuit). See sec. 7482(b)(1)(G)(i), (2).

[*4]   In 2002 Crews created Erosion Stopper to provide environmental services. He was initially the company's owner and president.  Despite working for Erosion Stopper, he still spent some of his time on the chicken farm.

Sometime between March 4, 2002, and March 10, 2003, Crews transferred his entire ownership interest in Erosion Stopper to his wife.  After the ownership transfer, she was the president of Erosion Stopper.  She resigned from her registered nurse position and began working full time for Erosion Stopper.  Crews continued working for Erosion Stopper.

In March 2003 Tyson Foods, Inc., canceled its chicken contract with Crews. He gave up chicken farming altogether and focused his energies on Erosion Stopper.

In 2006 Crews' wife incorporated a second company to provide environmental services, K.C. Earthmovers, Inc. (hereinafter "K.C. Earthmovers"). She was initially the owner and president of the company.

Sometime between January 4, 2008, and March 25, 2009, Crews' wife transferred her entire ownership interest in K.C. Earthmovers to Hannah Diggs, the adult daughter of the Crewses.  At the same time as the transfer of ownership, Crews' daughter replaced Crews' wife as president of K.C. Earthmovers.

[*5] Letters 1153 and TFRP assessments

The IRS mailed Crews three Letters 1153 proposing to assess TFRPs against him for the employment taxes, respectively, of (1) Erosion Stopper for the four quarters 2Q 2008, 3Q 2008, 4Q 2008, and 1Q 2009; (2) K.C. Earthmovers for the five quarters 2Q 2008, 3Q 2008, 4Q 2008, 1Q 2009, and 2Q 2009; and (3) K.C. Earthmovers for the two quarters 3Q 2009 and 4Q 2009. Thus the three Letters 1153 cumulatively covered the following TFRPs: Erosion Stopper for the four quarters from 2Q 2008 to 1Q 2009 and K.C. Earthmovers for the seven quarters from 2Q 2008 to 4Q 2009. The Letters 1153 stated that Crews had 60 days to file a written protest with the Office of Appeals if he disagreed with the proposed TFRP assessments. The first two Letters 1153 were mailed and dated February 2, 2010. The third Letter 1153 was mailed and dated sometime after February 2, 2010. The exact date of mailing is not revealed by the record.

Crews received the Letters 1153 but did not respond to them. He did not make a written protest with the IRS.

On June 21 and 28, 2010, the IRS assessed TFRPs against Crews for the employment-tax liabilities of Erosion Stopper for the four quarters from 2Q 2008 to 1Q 2009 and of K.C. Earthmovers for the seven quarters from 2Q 2008 to 4Q 2009.

**[*6]** <u>Tax Examiner Sheneka Bradwell's determinations</u>

On July 25, 2012, Crews filed claims for refund on Forms 843, entitled "Claim for Refund and Request for Abatement," to challenge the TFRPs assessed against him for the employment-tax liabilities of Erosion Stopper for the four quarters from 2Q 2008 to 1Q 2009 and of K.C. Earthmovers for the seven quarters from 2Q 2008 to 4Q 2009. He paid a small amount of the TFRP liabilities. In his claims for refund, he not only sought a refund of the small amount of the TFRPs that he had already paid but also requested that the IRS abate his unpaid TFRP liabilities.

Crews' claims for refund were assigned to Tax Examiner Sheneka Bradwell.

On August 17, 2012, Tax Examiner Bradwell had a telephone call with Crews so that he could explain why he should not be liable for the TFRPs assessed against him for Erosion Stopper and K.C. Earthmovers.

On August 21, 2012, Tax Examiner Bradwell issued to Crews a Letter 3784, which contained her final determination denying his claims for refund.

<u>Appeals Officer Victoria Johnson's determinations</u>

On September 9, 2012, Crews sent the IRS a letter that was intended to appeal Tax Examiner Bradwell's determination. His letter stated: "I not believe I am not [sic] responsible for the unpaid taxes due to the fact that I was not in

**[\*7]** charge of any financial matters with Erosion Stoppers/K.C. Earthmovers at any time during their operations." While his letter thus mentioned both employers by name, it did not refer to their taxpayer identification numbers or to any amounts assessed. Nor did it did attach copies of the old Letters 1153. It stated that the "Tax periods involved" were the seven quarters from 2Q 2008 to 4Q 2009, a cumulative period that includes the quarters for the TFRPs assessed against him for both Erosion Stopper (i.e., 2Q 2008 to 1Q 2009) and K.C. Earthmovers (i.e., 2Q 2008 to 4Q 2009). It did not specify which quarters corresponded to which employer.

On September 28, 2012, Tax Examiner Bradwell provided the files related to Crews' claims for refund with respect to TFRPs for the employment-tax liabilities for both Erosion Stopper and K.C. Earthmovers to Tax Examiner Marilyn Figueroa so that Figueroa could provide the files to the Office of Appeals.[3]

Crews' appeal was assigned to Appeals Officer Victoria Johnson, who worked in the IRS's Jacksonville, Florida, office.

---

[3]The parties have stipulated the statement in the text. Neither party takes a position on whether Tax Examiner Figueroa actually provided the claim-refund files to the Office of Appeals. We do not make a finding of fact as to whether she did.

**[\*8]**   The parties disagree as to the scope of Crews' appeal to Officer Johnson. Crews contends his appeal related to TFRPs for the employment taxes of both Erosion Stopper and K.C. Earthmovers.  Therefore, Crews contends that Officer Johnson had jurisdiction over the TFRPs as to both employers.  The IRS contends that the appeal was narrower, relating only to the TFRPs for the employment taxes of K.C. Earthmovers.  Therefore, the IRS contends that Officer Johnson's jurisdiction was limited to the TFRPs as to K.C. Earthmovers.  We do not resolve this dispute over whether Officer Johnson had jurisdiction over the Erosion Stopper TFRPs because it does not affect our holding.  Our holding is that Officer Johnson did not determine to relieve Crews of the TFRPs related to Erosion Stopper (alternatively, we hold that the Office of Appeals did not abuse its discretion in concluding that she did not make such a determination).  See infra part 4.c and d.  Our holding would be the same even if we thought Officer Johnson had jurisdiction over the Erosion Stopper TFRPs.

While Crews' case was pending at the Office of Appeals, Tax Examiner Bradwell continued to monitor the case.  She recorded her observations about the

[*9] case in an IRS record known as an ICS History.[4]  ICS stands for "Integrated

Collection System".

Meanwhile, Crews' wife had also appealed to the Office of Appeals her

liability for TFRPs arising from Erosion Stopper.  The periods to which these

TFRPs related were the four quarters from 2Q 2008 to 1Q 2009.  Her appeal was

handled by Officer Johnson while she also handled Crews' appeal.[5]

On September 28, 2012, Officer Johnson began making entries in an Office

of Appeals computer file known as a case activity record.  The heading of the case

---

[4]The IRS objects to the admission of the ICS History into evidence.  See infra part 3 (further explaining the objection).  Therefore the IRS takes exception to any findings of fact, such as the one in the text to which this note corresponds, that are based on information in the ICS History.  As explained infra part 4.b, we overrule the IRS's objection to the ICS History.

[5]The IRS does not agree with our finding that Officer Johnson was handling Crews' wife's appeal, but this fact is shown by the letter of October 23, 2012, see infra p. 10, which Officer Johnson addressed to both Crews and his wife.  It is also shown by a letter by Officer Johnson, dated May 23, 2013, setting forth her determination not to relieve Crews' wife of TFRP liabilities related to four quarters for Erosion Stopper (2Q 2008 through 1Q 2009).  See infra pp. 16-17.

Crews contends that his wife's appeal of her liability for TFRP assessments was an appeal from the denial of her Form 843 claim for TFRP abatements.  However, the evidence does not support the proposition that his wife's appeal was from the denial of a Form 843 claim.  There is no such Form 843 in the trial record.  And the mere fact that her appeal involved TFRPs does not necessarily mean that the appeal related to the denial of a Form 843 claim.  A taxpayer can administratively appeal TFRPs other than by appealing the denial of the Form 843 claim.  For example, a taxpayer can appeal a Letter 1153 proposing to assess TFRPs.  Pough v. Commissioner, 135 T.C. 344, 345, 349 (2010).

[*10] activity record had work unit No. 1412270027. The heading of the case activity record also had the notation "TFRP". The case activity record did not expressly state which employer was involved in the TFRP liability to which the case activity record pertained. The case activity record did not state which quarters were involved. Until December 5, 2012, the entries of this case activity record referred to events involving the TFRP liability of both Crews and his wife.

On October 23, 2012, Officer Johnson sent a letter addressed to both Crews and his wife scheduling a "face-to-face conference * * * on this case" for November 14, 2012. The heading of the letter referred to TFRP liabilities for 2Q 2008, 3Q 2008, 4Q 2008, and 1Q 2009. The letter did not reference an employer. The four quarters referred to in the letter were the quarters for which TFRPs had been assessed against Crews for Erosion Stopper. The four quarters referred to in the letter were also for the quarters for which Crews' wife was appealing the TFRPs with respect to Erosion Stopper.

After Crews and his wife received the October 23, 2012 letter, they retained attorney Keith Johnson and his law firm to represent them at the Office of Appeals. Before that they had been unrepresented.

At some point the meeting scheduled for November 14, 2012, was rescheduled for December 6, 2012.

[*11] On December 4, 2012, attorney Johnson wrote a letter to Officer Johnson. The letter argued that Crews should not be liable for the TFRPs with respect to Erosion Stopper and K.C. Earthmovers. The letter identified the periods involved as the seven quarters from 2Q 2008 to 4Q 2009. The letter did not state which quarters corresponded to which employer. The letter explained that Erosion Stopper and K.C. Earthmovers had been operating as one "business".

On December 5, 2012, Officer Johnson made the following entry in the case activity record with work unit No. 1412270027: "AO removed Lou Ann Crews [Crews' wife] as she has separate WUNO [work unit No.] 1412220028". On December 5, 2012, Officer Johnson created a separate case activity record for Crews' wife with work unit No. 1412270028, a file that is not in the trial record. After December 5, 2012, the entries in the case activity record for work unit No. 1412270027 reflect only activity with respect to Crews himself. The file heading for this case activity record after that date show that the "tp" (meaning taxpayer) was Crews.

On December 6, 2012, Officer Johnson met with attorney Johnson and attorney Christine Jones. Attorney Jones was an associate with the law firm of Johnson & Johnson, P.A., from the fall of 2012 through early 2014. Attorney Johnson was a partner in Johnson & Johnson, P.A. During her time with Johnson

[*12] and Johnson, P.A., attorney Jones was the attorney with primary responsibility for Crews' appeal in front of Officer Johnson. The December 6, 2012 meeting was the meeting originally scheduled for November 14, 2012. During the meeting there was no discussion of whether the TFRPs being considered were those related to Erosion Stopper as opposed to K.C. Earthmovers.

On December 21, 2012, attorney Johnson sent a letter to Officer Johnson "in follow-up to" the December 6, 2012 meeting. The heading of his letter referred to Crews as the "Taxpayer". It also referred to the "Trust Fund Recovery Penalty Appeal" and named seven quarters: 2Q 2008, 3Q 2008, 4Q 2008, 1Q 2009, 2Q 2009, 3Q 2009, and 4Q 2009. The letter had two entries for "Business:". One entry was for Erosion Stopper; the other was for K.C. Earthmovers. The letter did not state which quarters corresponded to which businesses. The letter stated:

> As I understand it, based upon numerous factors, you will be recommending a full and complete concession of the Trust Fund Recovery Penalty ("TFRP") tax assessments against our client, Kelvin R. Crews, for the various tax quarters involved. We trust that once your recommendation is reviewed, approved by your Team Leader and finalized, you will be closing out Mr. Crews' case separate from his wife's and daughter's.

Thus, the letter documented attorney Johnson's belief that Officer Johnson would recommend abatement of TFRP assessments against Crews for both Erosion Stopper and K.C. Earthmovers.

[*13] On the same day, December 21, 2012, attorney Johnson wrote another letter to Officer Johnson. The letter had two headings for "Taxpayer". Under one heading was the name of Crews' wife. Under the other was the name of Crews' daughter. (By this time Crews' daughter had retained attorney Johnson to represent her before the IRS. However, the record does not reveal the details about the nature of her dispute with the IRS.) The letter referred to the "Trust Fund Recovery Penalty Appeal" for seven quarters: 2Q 2008, 3Q 2008, 4Q 2008, 1Q 2009, 2Q 2009, 3Q 2009, and 4Q 2009. The letter had two entries for "Business:". One entry was for Erosion Stopper; the other was for K.C. Earthmovers. The letter did not state which quarters corresponded to which employer (i.e., Erosion Stopper or K.C. Earthmovers). Nor did the letter state which quarters corresponded to which alleged responsible person (i.e., Crews' wife or Crews' daughter). The letter stated:

> We write in follow-up to our meeting of Thursday, December 6, 2012. We have this date sent to the Disclosure Scanning Operation Office of Internal Revenue Service five (5) Freedom of Information ("FOIA")/ Privacy Act requests for the above-referenced two (2) Taxpayers, Kelvin R. Crews, and the two (2) corporations giving rise to the assertion of the Trust Fund Recovery Penalties, Erosion Stopper, Inc. and KC Earthmovers, Inc.
>
> As we understand it, this case is not over age and you have the flexibility to keep it for some time. Due to the procedural irregularities arising in the husband's case, we would greatly

[*14] appreciate your holding the case file indefinitely pending our receipt and review of the FOIA responses and materials provided thereunder. It typically takes thirty (30) to sixty (60) days to receive the materials, and we have suspensed [sic] this matter for seventy-five (75) days from now to provide you with an update or follow-up.

Let us know if, or for any reason, you cannot hold open your files pending our receipt and review of the FOIA information; otherwise, we will contact you within the seventy-five (75) days (on or around March 6, 2013).

On March 22, 2013, Officer Johnson made an entry in what by then was the case activity record for Crews' TFRPs, i.e., work unit No. 1412270027. The entry stated:

POA called wanting to know when this case will be closed. AO informed her that this case must be closed together with the related responsible persons. The POA requested additional time with the two related cases to review the FOIA documents.

The call from the "POA" was a telephone call from attorney Jones. During the telephone call, attorney Jones and Officer Johnson did not discuss which employer the TFRP assessments related to (i.e., Erosion Stopper or K.C. Earthmovers).

On April 22, 2013, attorney Jones wrote a letter to Officer Johnson, stating:

We write in follow-up to our meeting on December 6, 2012 regarding Kelvin R. Crews' Trust Fund Recovery Penalty Appeal. We submitted a FOIA request for Mr. Crews on December 21, 2012, a copy of which is attached. We also submitted four (4) other FOIA/Privacy Act requests for his wife, LouAnn Crews, his daughter Hannah Diggs, and the two (2) corporations. We received responses for both corporations, Erosion Stopper, Inc. and KC Earthmovers,

[*15] Inc., as well as for LouAnn Crews and Hannah Diggs, but did not receive any response for Mr. Crews.  In following up, the Disclosure Specialist recently informed us that Mr. Crews does not have a separate administrative file.

Our review of the FOIA documents confirmed what we already suspected, that the investigation was poorly done, and there was no basis for asserting the TFRP against him.  Being related to the owners and Presidents is legally insufficient, and this appears to be the sole basis for the assessment.

We request that you determine that Kelvin R. Crews is not liable for the TFRP for any quarters assessed against him for Erosion Stopper, Inc. and KC Earthmovers, Inc., for the reasons stated in the Trust Fund Recovery Penalty Appeal letter dated December 4, 2012, which we incorporate by reference, and that his file be closed and the TFRP assessment abated once you make the determination for LouAnn Crews and Hannah Diggs.

Attached to the letter was a copy of a letter from attorney Johnson, dated December 21, 2012, requesting from the IRS disclosure office various IRS records with respect to the assessment of TFRPs against Crews for Erosion Stopper and K.C. Earthmover for the eight quarters from 1Q 2008 through 4Q 2009.  The December 21, 2012 letter did not state which quarters corresponded to which employer.  It is unclear why the letter refers to 1Q 2008 at all.

On May 15, 2013, Officer Johnson made the following entry in the case activity record for Crews' TFRPs (i.e., work unit No. 1412270027):  "Related

[*16] party agreement is secured. AO has to adjust this TP's MFT 55. AO determined that TP is not responsible or acted willfully."

On May 21, 2013, Officer Johnson made the following entry in the case activity record regarding Crews' TFRPs (i.e., the record with work unit No. 1412270027): "TP is not a responsible person within the meaning of IRC 6672".

On May 22, 2013, Tax Examiner Bradwell made the following entry in the ICS History: "Called and spoke w/Victoria Johnson [telephone number omitted] addressed status of case. She advised that the tp was found not liable and the assmts are being abated against him."

On May 23, 2013, Officer Johnson wrote a letter to attorney Jones. Under the heading "Corporation", Officer Johnson's letter named K.C. Earthmovers. The letter did not mention Erosion Stopper. The letter stated that the relevant tax periods were the seven quarters from 2Q 2008 to 4Q 2009. The letter stated:

> We have considered your protest and the evidence and arguments in support of your position against the Trust Fund Recovery Penalty assessment.

> We are returning your case file to the Area Director with the determination that you be relieved of liability for the tax periods indicated above.

> If you have any questions, please call me at the above phone number.

[*17] The parties have stipulated that Officer Johnson made a determination to relieve Crews of his TFRP liabilities for K.C. Earthmovers for the seven quarters from 2Q 2008 to 4Q 2009, that this May 23, 2013 letter set forth that determination, and that this letter was "Appeals Officer Johnson's determination letter with respect to petitioner, addressed to petitioner's counsel". As we stated above, the letter referred to K.C. Earthmovers but not Erosion Stopper. However, attorney Jones thought that Officer Johnson had jurisdiction over Crews' TFRPs for both Erosion Stopper and K.C. Earthmovers and that Officer Johnson was considering Crews' TFRPs for both corporations. Therefore attorney Jones thought that the May 23, 2013 letter meant that Officer Johnson had determined not only that Crews was not liable for the TFRPs with respect to K.C. Earthmovers, but also that he was not liable for the TFRPs with respect to Erosion Stopper. Consequently, attorney Jones did not call Officer Johnson to clarify whether the determination covered the Erosion Stopper TFRPs. In attorney Jones' view, the determination covered the Erosion Stopper TFRPs.

On May 23, 2013, Officer Johnson wrote a letter to attorney Johnson setting forth her determination not to relieve Crews' wife of her TFRP liabilities for the employment tax liabilities of Erosion Stopper for the four quarters from 2Q 2008 to 1Q 2009.

**[\*18]** The IRS abated Crews' TFRP liabilities for K.C. Earthmovers but not for Erosion Stopper.

On May 31, 2013, Tax Examiner Bradwell made the following entry in the ICS History with respect to Crews' collection case: "The TFRP assmt was totaly [sic] abated against Mr. Crews." The IRS objects to this entry and to the entire ICS History (which is Exhibit 14-J). We overrule this objection, as explained infra part 4.b.

On May 31, 2013, Tax Examiner Bradwell closed out her collection case.

CDP hearing before the Office of Appeals

On December 8, 2015, the IRS issued a Letter 1058, "Final Notice of Intent to Levy and Notice of Your Right to a Hearing," for Crews' TFRP liabilities for Erosion Stopper for the three quarters 3Q 2008, 4Q 2008, and 1Q 2009.

On March 4, 2016, the IRS issued a Letter 1058 for Crews' TFRP liabilities for Erosion Stopper for 2Q 2008.

Crews made timely requests for a CDP hearing regarding both Letters 1058. He then requested that the hearing be face-to-face. The CDP hearing was assigned to Settlement Officer Cathleen Curry in the IRS's Jacksonville, Florida, Office of Appeals. Officer Curry recorded entries regarding the hearing in a new case activity record with work unit No. 1416020003.

[*19] During the CDP hearing (which included a meeting on June 30, 2016, that is described in the July 28, 2016 notice of determination), the only issue Crews raised was that the IRS erred by not abating his TFRP liabilities for Erosion Stopper because Officer Johnson had determined he was not liable for those TFRP liabilities.

On June 21, 2016, Officer Curry sent the following email to Officer Johnson:

> Was wondering if I could pick your brain about a case you previously worked the TFRP issue. The POA (Keith Johnson) states that when you worked case you indicated both TFRPs should be abated in full for taxpayer.
>
> Name of tp is Kelvin Crews SSN [redacted in original]
>
> He had 2 TFRP assessments but I see only one that was abated:
> 240R 06212010    10,857.57  20102308  29254-554-5201
>                         XREF-TIN [redacted in original] or K C
>                         EARTHMOVERS INC
>
> The other TFRP was assessed for
> 240 06282010     5,933.71  20102408  81254-558-52113-
>                         XREF-TIN [redacted in original] or EROSION
>                         STOPPERS INC
>
> Do you recall whether both TFRPs should have been abated? Thanks for any help you can give on this.

Officer Johnson emailed back: "The TP should have a copy of my closing letter."

[*20] On June 21, 2016, Officer Curry made the following entry in her case activity record: "this TFRP file had to be ordered from the retention files located somewhere other than JAX?"

On June 22, 2016, Officer Curry made the following entry in her case activity record: "TFRP file for erosion has been ordered from records center."

On June 27, 2016, Officer Curry made the following entry in her case activity record: "recd TFRP file".

On July 12, 2016, Officer Curry emailed Tax Examiner Figueroa asking her to "retrieve the 843 Claim file for Kelvin Crews". Tax Examiner Figueroa responded: "I do not have the 843 file because after 2 years the file gest [sic] destroyed". An adhesive note attached by Officer Curry to a printout of the email chain says "843 Claim file destroyed." In her case activity record, Officer Curry summarized the email exchange this way: "Emailed M Figueroa for possible 843 Claim closed case; uncertain if housed in Jax or not. response from Advisory Figueroa. States V Johnson prev worked the Appeals and they do not retain case files for 843 Claims for more than 2 years." On July 12, 2016, Officer Curry emailed Officer Johnson:

> Due to a possible court challenge being proposed on my assigned
> CDP appeal; I need to get a copy of your Appeals history, 5402,
> 3870, and any closing documentation you may have retained for the

[*21] case you previously worked in Appeals regarding a previous 843 TFRP claim.

I attempted to get the closed Appeals file from the Advisory Unit but they have informed me it has been destroyed.

On July 19, 2016, Officer Curry emailed Officer Johnson:

Hope you are well, not sure if you got the below email [the July 12, 2016 email]; you may be on leave. I need any of your saved documents on this case as I tried to obtain the initial claim file and it has been destroyed per Advisory Unit. If you no longer have this info; please advise so i can add your response to my history and notice of determination letter.

Officer Johnson responded: "I don't have anything. I can't access my I:drive right now. But I am sure it is not there either. I back up all my cases in a thumb drive." Officer Curry emailed back: "Can you check your thumb drive see if you may be able to pull it up?" Officer Johnson responded: "I do not have anything for this tp." Officer Curry emailed: "Thanks Victoria, I thought your mentioning of a thumb drive storing docs may have produced something. Apologies."

On July 20, 2016, Officer Curry received from Mark C. Pettigrew, Officer Johnson's manager, a printout of the case activity record with work unit No. 1412270027, i.e., the case activity record initially used for Crews and his wife for a time, and later exclusively for Crews.

[*22] In her handling of Crews' CDP case, Officer Curry reviewed 35 documents. These 35 documents appear in the trial record as subexhibits D through AL attached to Exhibit 2-J.

Officer Curry determined there was no evidence that Officer Johnson had conceded Crews' TFRP liabilities for Erosion Stopper. Officer Curry also determined she was precluded from considering Crews' TFRP liabilities for Erosion Stopper herself since Crews had already had a prior opportunity to challenge those liabilities.

On July 20, 2016, Officer Curry met with attorney Johnson and informed him that there was no evidence that Officer Johnson had conceded Crews' TFRP liabilities for Erosion Stopper.

On July 28, 2016, the Office of Appeals in Jacksonville, Florida, issued Crews a notice of determination regarding the CDP hearing. The notice of determination sustained the notices of intent to levy. The notice of determination rejected Crews' argument that Officer Johnson had conceded the TFRPs with respect to Erosion Stopper. In particular, the notice of determination stated:

> On 06/30/2016, a Face to Face hearing was held in the Jacksonville Federal Office Building. You and your representative, Keith Johnson, were present. It was explained to you, that Letter 1153 letter was issued and you had a prior opportunity to raise the TFRP liability. You and Mr. Johnson stated that a prior appeal was worked

[*23] which would have addressed the TFRP that was assessed against you regarding 2 different corporations, namely Erosion Stopper, Inc. and KC Earthmovers, Inc. It was explained that the TFRP assessment for KC Earthmovers, Inc. had indeed been abated in entirety per review of your account; however, the TFRP assessment remained for Erosion Stopper, Inc. You indicated that you would like the previous appeal file regarding a Claim to be reviewed. You were given the information that if the previous Claim Appeal file was ordered and found to have no information regarding the abatement in full for the TFRP regarding Erosion Stopper; that the liability issue would be precluded in this Collection Due Process appeal due to a prior opportunity. It was agreed that the previous appeal paperwork regarding your claim would be ordered and reviewed. The requested collection alternative was to proceed with the $600.00 installment Agreement that had been initiated by the Compliance Revenue Officer.

The paperwork was subsequently ordered for the previous Appeal Claim File worked and there was no indication that the TFRP was conceded regarding Erosion Stopper, Inc.

On 7/20/2016 another conference was held with Mr. Keith Johnson. He was informed of the findings regarding review of the previous Claim Appeal. He was informed that the review did not indicate any abatement was in order for the TFRP regarding Erosion Stopper Inc. He was told the liability issue regarding the TFRP would be precluded in the CDP appeal due to prior opportunity. He requested that the Notice of Determination Letter be issued to allow you continued court rights.

Crews filed a timely petition with this Court.

**[*24]**                                              OPINION

1.    Burden of proof

Generally the petitioner in a Tax Court case has the burden of proof.  Rule

142(a).  Crews, the petitioner in this case, does not argue that the IRS has the

burden of proof.  We hold that he bears the burden of proof.

2.    Relevant legal principles

The Internal Revenue Code requires employers to collect their employees'

income taxes, and their employees' share of the Federal Insurance Contributions

Act tax, by withholding from employee paychecks.  Sec. 3102(a) and (b) (Federal

Insurance Contributions Act tax); sec. 3402(a)(1) (income tax); sec. 3403.  These

withholding obligations are part of a broader series of obligations known as

employment taxes.  See TFT Galveston Portfolio, Ltd. v. Commissioner, 144 T.C.

96, 97 n.4 (2015).  Once withheld, the amounts must be held by the employer in

trust for the government until paid over by the employer to the government.  Sec.

7501.  The term "trust-fund taxes" is used to describe these withheld taxes.  See

Weber v. Commissioner, 138 T.C. 348, 357-359 (2012); Pollock v. Commissioner,

132 T.C. 21, 25 n.10 (2009).  Under section 6672, a person responsible for

collecting and paying over trust-fund taxes who willfully fails to do so is

personally liable for a TFRP equal to the amount of the delinquent taxes.  Slodov

[*25] v. United States, 436 U.S. 238, 244-245 (1978).  A person responsible for collecting and paying over trust-fund taxes is known in the caselaw as a "responsible person".  Lee v. Commissioner, 144 T.C. 40, 46 (2015).  When an employer fails to pay over the trust-fund-tax component of employment taxes, not only can the IRS collect the unpaid amount from the employer, sec. 3403, but it also can collect a TFRP from responsible persons (who acted willfully), Dixon v. Commissioner, 141 T.C. 173, 192 (2013).  As a matter of practice, the IRS does not collect from both the employer and the responsible persons.  Id. at 192-193.

Section 6672(b)(1) provides that before a TFRP can be "imposed" on a person, the IRS must first give that person notice.  The IRS gives this notice through a Letter 1153.  Lee v. Commissioner, 144 T.C. at 47.  The Letter 1153 explains that the IRS intends to assess a TFRP and that the person can appeal the proposed assessment to the IRS.  See Giaquinto v. Commissioner, T.C. Memo. 2013-150, at *10 n.7; Bland v. Commissioner, T.C. Memo. 2012-84, slip op. at 14 (citing Rev. Proc. 2005-34, 2005-1 C.B. 1233, 1234-1235).  Section 6672(b)(2) provides that the section 6672(b)(1) notice must be given at least 60 days before the IRS has given notice and demand for the TFRP.  Section 6303(a) requires the

**[\*26]** IRS to give notice and demand contemporaneously with the assessment of any tax, including a TFRP.[6] See sec. 6671(a).

Section 6672(b)(2) has been construed to mean that the section 6672(b)(1) notice must be given before assessment of the TFRP. Romano-Murphy v. Commissioner, 816 F.3d 707, 711, 715 (11th Cir. 2016), vacating and remanding on other grounds T.C. Memo. 2012-330; Conway v. Commissioner, 137 T.C. 209, 214 (2011), aff'd sub nom. Nabano v. Commissioner, 552 F. App'x 724 (9th Cir. 2014). Thus, the assessment of the TFRP cannot occur before the section 6672(b)(1) notice. In addition to this constraint on the timing of a TFRP assessment, there is a general deadline for the IRS to assess any tax, including the TFRP. See secs. 6501(a), 6671(a); Stallard v. United States, 12 F.3d 489, 493 (5th Cir. 1994). For assessments of the TFRP, section 6672(b)(3) provides two rules that extend the time during which the IRS is permitted to assess. One of these rules is section 6672(b)(3)(B). Under section 6672(b)(3)(B), if the IRS sends the notice required by section 6672(b)(1) to a person, and if the person makes a timely protest of the TFRP, then the period for assessing the TFRP is held open until 30

---

[6]Sec. 6303(a) requires that the IRS give notice and demand as soon as practicable after the assessment of any tax, including a TFRP. See sec. 6671(a). In no instance can the notice and demand lag the assessment by more than 60 days. Sec. 6303(a).

[*27] days after the IRS has made a final administrative determination with respect to the protest. In <u>Romano-Murphy v. Commissioner</u>, 816 F.3d at 716, the U.S. Court of Appeals for the Eleventh Circuit construed section 6672(b)(3) to require the IRS to make a final administrative determination before assessing a TFRP if the person makes a timely protest of the section 6672(b)(1) notice.

Assessing a tax does not automatically result in its collection. If the taxpayer fails to pay the tax within 10 days of the section 6303 notice and demand, the IRS may collect the tax by levying on the taxpayer's property. Sec. 6331(a). However, section 6330(a)(1) forbids the IRS to levy until it sends the taxpayer a notice of the taxpayer's right to request a CDP hearing with the Office of Appeals. <u>See also</u> sec. 6330(a)(3)(B). If the taxpayer requests such a hearing, the Office of Appeals must hold the hearing. Sec. 6330(b)(1), (c)(3). The prohibition on the levy lasts throughout the hearing and for some time afterwards. Sec. 6330(e)(1).

At the hearing, the taxpayer may raise any relevant issue relating to the unpaid tax or the proposed levy, including offers of collection alternatives. Sec. 6330(c)(2)(A). The taxpayer may also raise a challenge to the existence or amount of the underlying tax liability if the taxpayer did not have a prior opportunity to dispute the tax liability. Sec. 6330(c)(2)(B). The Office of Appeals is required in making its CDP determination to take into account these issues and challenges

[*28] raised by the taxpayer. Sec. 6330(c)(3)(B). It must also take into account whether it was able to verify whether the requirements of any applicable law or administrative procedure have been met. Sec. 6330(c)(1), (3)(A). It must also take into account whether the levy balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that any collection action be no more intrusive than necessary. Sec. 6330(c)(3)(C). A taxpayer dissatisfied with the CDP determination made by the Office of Appeals can file a petition with the Tax Court. Sec. 6330(d)(1). The Tax Court then has jurisdiction to review the CDP determination. Id.

We review a CDP determination de novo regarding the underlying tax liability (if it is properly at issue). See Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). As to issues other than the underlying liability, we review the determination for abuse of discretion. See id. at 182. That is, we decide whether the determination was arbitrary, capricious, or without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).

Before the IRS can collect the TFRP from a person through levy, the IRS must first notify the person of the right to request a CDP hearing. Lee v. Commissioner, 144 T.C. at 48. A person contesting a TFRP levy in a CDP

[*29] hearing can challenge the existence or amount of the TFRP liability, but only if that person did not have a prior opportunity to dispute it. Sec. 6330(c)(2)(B); Lee v. Commissioner, 144 T.C. at 48. A Letter 1153 is an opportunity to dispute the TFRP liability. See sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs.; Mason v. Commissioner, 132 T.C. 301, 317-318 (2009). Therefore a person who has received a Letter 1153 cannot in a CDP hearing dispute the existence or amount of the TFRP. See sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs.; Bletsas v. Commissioner, T.C. Memo. 2018-128, at *8-*9.

3. Positions of the parties

In its CDP determination, the Office of Appeals rejected Crews' sole argument at the CDP hearing, which was that Officer Johnson had determined to relieve him of liability for TFRPs for employer Erosion Stopper. The Office of Appeals in its CDP determination sustained the CDP notices, i.e., the notices of proposed levy. In challenging this determination, Crews maintains, as he did at the CDP hearing, that Officer Johnson had made a determination to relieve him of liability for the Erosion Stopper TFRPs. Crews contends that the appropriate

[*30] standard of review is not abuse of discretion.[7]  He argues that even if the appropriate standard of review is abuse of discretion, the Office of Appeals' CDP determination should not be sustained because it would be an error of law for the Office of Appeals to sustain an action to collect a TFRP that the Office of Appeals had determined in a prior proceeding was not owed.

Crews argues that the Office of Appeals in the CDP hearing failed to acquire all IRS records relevant to the question of whether Officer Johnson had determined to relieve Crews of the Erosion Stopper TFRPs (records which, according to Crews, include the ICS History).  Crews considers this alleged failure to gather complete records to be spoliation of evidence.  As a sanction, Crews urges the Court to infer that complete records would have shown that Officer Johnson had determined to abate the Erosion Stopper TFRPs.

Crews argues in the alternative that if Officer Johnson did not determine to abate the Erosion Stopper TFRPs, then his liability for these TFRPs is a matter still pending with Officer Johnson.  If the matter is still pending with Officer Johnson, Crews argues, the Court should either (1) not sustain the CDP

---

[7]Crews argues that the appropriate standard of review is instead "preponderance of evidence".  Preponderance of evidence is a standard of proof rather than a standard of review.  We think Crews intends to say that the appropriate standard of review was de novo.

**[\*31]** determination of the Office of Appeals because it was an error for that Office to sustain the levy to collect TFRPs while Officer Johnson had not yet made a determination about the TFRPs, (2) remand this case to the Office of Appeals in its CDP capacity for it to await Officer Johnson's determination, or (3) remand this case to the Office of Appeals in its CDP capacity for "further research or development of this issue".

Crews claims that he does not challenge the merits of the TFRPs, and he says he does not contest that he is a responsible person or that he acted willfully. He does not challenge the TFRPs on the ground that the initial determination of the assessment of the TFRPs was not supervisorily approved. See sec. 6751(b).

The IRS contends that because Crews received a Letter 1153 with respect to the Erosion Stopper TFRPs he was barred from challenging the existence or amount of these TFRPs in the CDP hearing. As a result, the IRS contends, the Office of Appeals' CDP determination should be reviewed under an abuse-of-discretion standard of review. The IRS contends that it was not an abuse of discretion for the Office of Appeals to determine that Officer Johnson had not previously absolved Crews of the Erosion Stopper TFRPs. The IRS contends that the appropriate issue to be resolved is not whether Officer Johnson conceded the TFRPs, but whether she "did so in such a clear and unequivocal way that it would

**[\*32]** be an abuse of discretion for Settlement Officer Curry ('SO Curry') to find otherwise."

Responding to Crews' spoliation argument, the IRS contends that no sanction for spoliation is warranted because Crews does not even allege that any evidence was destroyed. The IRS observes that Crews claims only that Officer Curry failed to request the right documents, not that she destroyed documents. The IRS contends that Officer Curry's requests for documents were reasonable and the scope of her document requests did not constitute an abuse of discretion.

Addressing Crews' argument that the matter of his Erosion Stopper TFRP liability still is pending with Officer Johnson, the IRS contends that Crews has not proven this to be true. Further, the IRS opposes Crews' proposal that the Court remand the case to the Office of Appeals in its CDP capacity in order to await the determination of Officer Johnson with respect to the Erosion Stopper TFRPs. The IRS contends that the Office of Appeals in a CDP capacity does not have the power to require Officer Johnson to issue a determination with respect to the Erosion Stopper TFRPs and that therefore a remand would be unproductive. The IRS also disagrees with Crews' proposal that the Court remand the case to the Office of Appeals in its CDP capacity for the Office of Appeals to conduct further

[*33] research.  The IRS contends that the CDP hearing adequately considered whether there had been a prior determination by Officer Johnson.

There is also a dispute between the parties on the admissibility of evidence.  The IRS objects to the ICS History (Exhibit 14-J) and to those portions (paragraphs 56 and 57) of the stipulation concerning the ICS History.  The IRS argues that because the ICS History was not considered by Officer Curry in the CDP hearing, the ICS History is irrelevant in determining whether Officer Curry abused her discretion on behalf of the Office of Appeals.  The IRS also argues that the ICS History is inadmissible hearsay.  Crews contends that the disputed evidence is admissible.

4.    Analysis

a.    Crews' alternative argument

At his CDP hearing, Crews argued that Officer Johnson had earlier made a determination that Crews was not liable for the Erosion Stopper TFRPs.  Crews continues to make this argument.  In the alternative, he argues that the matter of his liability for the Erosion Stopper TFRPs is still pending with Officer Johnson.  Crews did not make this alternative argument at the CDP hearing.  We will not consider his alternative argument.

**[\*34]** Section 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs., provides that a taxpayer who is seeking Tax Court review of a determination of the Office of Appeals in a CDP case can "only ask the court to consider an issue, including a challenge to the underlying tax liability, that was properly raised in the taxpayer's CDP hearing." The regulation further states that an "issue is not properly raised if the taxpayer fails to request consideration of the issue by Appeals". <u>Id.</u> The only issue that Crews raised at the CDP hearing was that Officer Johnson had earlier determined that he was not liable for the Erosion Stopper TFRPs. As the stipulation states: "During the CDP hearing, the only issue petitioner's counsel raised was that respondent erred by not abating petitioner's TFRP liabilities for Erosion Stopper because Appeals Officer Johnson determined he was not liable for those TFRP liabilities." Thus, we will consider only the issue that Crews raised at the CDP hearing, which is whether Officer Johnson determined that he was not liable for the Erosion Stopper TFRPs.

  b. <u>Admissibility</u>

  As explained above, the parties dispute the admissibility of the ICS History and the portions of the stipulation related to the ICS History. We hold that this evidence is relevant to Crews' theory that Officer Curry abused her discretion by failing to request the ICS History. <u>See</u> Fed. R. Evid. 402. Although it is true that

**[\*35]** Officer Curry did not review the ICS History, the content of the ICS History gives us an idea of whether it would have made any difference had Officer Curry obtained the ICS History and reviewed it. As for the IRS's hearsay objection, we hold that the ICS History is not hearsay because it was made by an employee of the Commissioner of Internal Revenue. See Fed. R. Evid. 801(d)(2)(D) (excluding from the definition of hearsay a statement offered against the opposing party and made by the opposing party's employee).[8] The ICS History is admissible.

    c.    Analysis under de novo standard of review

As explained before, the parties have different views on the appropriate standard of review. See supra part 3. We do not resolve this dispute. Under either the de novo standard of review or the abuse-of-discretion standard of review, we hold that the CDP determination should be sustained.

Under the de novo standard of review, we do not defer to the conclusions of the agency. Under this standard of review, and reviewing the entire trial record, including the evidence the admissibility of which was disputed, we conclude that Officer Johnson did not determine that Crews was not liable for the Erosion Stopper TFRPs.

---

[8]It is the Commissioner who is a party to this case. Rule 60(b). We have been referring to the Commissioner as the "IRS" only for the sake of convenience. See supra note 1.

**[\*36]** Although the letters from attorney Johnson and attorney Jones to Officer Johnson requested that Crews be relieved of the TFRPs with respect to Erosion Stopper (i.e., the letters dated December 21, 2012, and April 22, 2013), none of Officer Johnson's return correspondence referred to the TFRPs with respect to Erosion Stopper. And although Officer Johnson's entries in a case activity record (entries dated May 15 and 21, 2013) indicated that she believed that Crews was not liable for TFRPs, these entries do not say that he was not liable for the TFRPs with respect to Erosion Stopper in particular.

In one of the entries in the ICS History (dated May 22, 2013), Tax Examiner Bradwell stated that she was told by Officer Johnson that Crews was being relieved of TFRP liabilities. Crews suggests that this statement shows that Officer Johnson had determined to relieve Crews of the liabilities related to both Erosion Stopper and K.C. Earthmovers. In our view, however, the strongest evidence of the scope of Officer Johnson's determination is her letter of May 23, 2013, in which she stated that she had made the "determination" to relieve Crews of TFRPs. This determination letter referred to K.C. Earthmovers and not Erosion Stopper. Furthermore, Officer Curry asked Officer Johnson (by email on June 21, 2016) whether she had meant to abate the liability of Erosion Stopper. In

[*37] response, Officer Johnson directed her to this determination letter (which refers only to K.C. Earthmovers).

Crews contends that the determination letter actually refers to the TFRP liabilities related to Erosion Stopper because the seven quarters to which the letter refers include the four quarters for which a TFRP was assessed with respect to Erosion Stopper's employment taxes. But the letter does not mention Erosion Stopper by name. It does mention K.C. Earthmovers. The seven quarters mentioned by the letter are the seven quarters for which the IRS had assessed TFRPs related to K.C. Earthmovers. In our view, the determination letter does not refer to the TFRP liabilities related to Erosion Stopper.

It is also significant that Crews' TFRPs with respect to K.C. Earthmovers were abated by the IRS, but not his TFRPs with respect to Erosion Stopper. That the IRS abated one type of liability but not the other suggests that Officer Johnson's determination covered only the liabilities with respect to Erosion Stopper.

After the IRS abated the TFRP liabilities with respect to K.C. Earthmovers, Tax Examiner Bradwell made an entry in the ICS History for Crews' TFRPs stating that the TFRPs had been totally abated. If the ICS History entry was intended to say that the IRS had abated the Erosion Stopper TFRPs, then the ICS

**[*38]** History entry is factually incorrect. Paragraph 43 of the stipulation of facts states that the IRS did not abate the Erosion Stopper TFRPs: "Respondent abated petitioner's TFRP liabilities for K.C. Earthmovers, but not petitioner's TFRP liabilities for Erosion Stopper, after the appeals hearing." This ICS History entry does not disturb our conclusion about the scope of Officer Johnson's determination, which is that Officer Johnson did not determine to relieve Crews of the Erosion Stopper TFRPs.

In reaching this conclusion, we do not draw the inference that additional evidence not considered by Officer Curry would show that Officer Johnson determined to relieve Crews of the Erosion Stopper TFRPs. Under the doctrine of spoliation of evidence, an adverse inference is drawn only if evidence has been lost or destroyed in bad faith. See Bashir v. Amtrak, 119 F.3d 929, 931 (11th Cir. 1997). The record does not support the proposition that evidence was lost or destroyed in bad faith.

    d.    Analysis under abuse-of-discretion standard of review

We now discuss the outcome of this case under the abuse of discretion standard of review. This is a deferential standard of review. See United States v. Frazier, 387 F.3d 1244, 1259 (11th Cir. 2004). What we are reviewing is the conclusion, made by the Office of Appeals in the CDP hearing, that Officer

[*39] Johnson had not determined to relieve Crews of liability for the TFRPs with respect to Erosion Stopper. Because we think that this conclusion is correct under a de novo standard of review, it follows that the conclusion would be correct under the more deferential standard of review of abuse-of-discretion. This logic would seemingly admit an exception if we thought that the Office of Appeals abused its discretion by failing to make a reasonable inquiry into the matter of whether Officer Johnson had determined to relieve Crews of liability for the TFRPs with respect to Erosion Stopper. We hold, however, that Officer Curry of the Office of Appeals took reasonable steps to ascertain whether Officer Johnson had determined that Crews was not liable for the TFRPs with respect to Erosion Stopper. Officer Curry emailed Officer Johnson. Officer Curry examined Officer Johnson's case activity record. Officer Curry also examined letters from attorney Johnson and attorney Jones to Officer Johnson, letters which referred to Crews' TFRP liability with respect to both corporations. Officer Curry's efforts failed to uncover sufficient evidence to convince her that Officer Johnson had determined to abate the TFRP liability with respect to Erosion Stopper.

**[*40]** Because Officer Curry's actions and conclusions were reasonable, we hold that the Office of Appeals did not abuse its discretion in concluding that Officer Johnson did not determine to abate the TFRPs pertaining to Erosion Stopper.[9]

e.      Conclusion

We sustain the July 28, 2016 determination of the Office of Appeals.

To reflect the foregoing,

An order will be issued admitting Exhibit 14-J and stipulated paragraphs 56 and 57, and decision will be entered for respondent.

---

[9]Crews' argument, that the CDP determination of the Office of Appeals was erroneous because the Officer Johnson had earlier determined that Crews was not liable for the Erosion Stopper TFRPs, assumes the existence of a legal rule that it is an error for the Office of Appeals in a CDP proceeding to approve a levy action to collect a liability that the Office of Appeals in a non-CDP proceeding had previously determined should be abated. The IRS does not dispute the existence of such a rule. We need not determine whether such a rule exists because we hold that (1) under a de novo standard of review Officer Johnson did not determine to abate Crews' TFRP liability with respect to Erosion Stopper and (2) alternatively, under an abuse-of-discretion standard of review the Office of Appeals did not abuse its discretion in concluding that there was no such prior determination. See supra part 4.c and d, respectively.